FIFTH AVENUE-14TH STREET CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108789. Promulgated August 6, 1943.

*Harry Friedman, Esq.,* for the petitioner.
*Conway Kitchen, Esq.,* for the respondent.

518

OPINION.

DISNEY, *Judge:* The issue here presented is whether or not the petitioner realized income through reductions of its mortgage indebtedness, the petitioner having purchased mortgage certificates at less than face value and the mortgagee having accepted them at face value in reduction of the debt. The respondent's position is that, under the rule of *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, the amounts by which face value exceeded petitioner's cost constitute income taxable to the petitioner. The petitioner makes the following contentions: first, that the principle of the *Kirby Lumber Co.* case has no application because the petitioner was insolvent at all times during the taxable years; second, that regardless of the question of solvency there will be no gain or loss realized until the petitioner makes final disposition of its property; and, third, that the satisfaction *pro tanto* of the mortgage debt by surrender of the mortgage certificates constituted payment in accordance with an alternative method provided for by the contract and hence the obligation was settled in full and not for less than its face amount. We shall discuss the questions thus raised in the order stated.

We have found as a fact that the petitioner was not insolvent during the taxable years. Its property account after depreciation deductions was at all times in excess of $1,220,000, and its book net worth was

in excess of $595,000. Even if the asset items of unamortized discount and those of prepaid expense be eliminated as bookkeeping rather than real assets, net worth of more than $560,000 would still be reflected. We think the evidence fails to show an overstatement in property account of that amount. Upon brief, the petitioner states that in order for it to have been solvent the value of its property would have to have been as much as $746,333.28 on December 31, 1934. $717,362.32 on December 31, 1935, $689,998.36 on December 31, 1936, and $658.830.82 on December 31, 1937. In our opinion it has not been shown to have been less than those amounts. After careful consideration of all the evidence, including the opinions of the expert witnesses of both parties, and meaning by fair market value the price at which a willing buyer and a willing seller would meet, we think that the land and building together had a fair market value of at least $800,000. It follows and we hold that the petitioner was solvent during all of the taxable years.

The petitioner's first alternative contention is that no taxable gain or loss will be realized in connection with the transactions under consideration until it sells or otherwise disposes of its property. In support of that position we are referred to the cases of *Hirsch* v. *Commissioner*, 115 Fed. (2d) 656; *A. L. Killian Co.*, 44 B. T. A. 169; affd., 128 Fed. (2d) 433; and *Pinkney Packing Co.*, 42 B. T. A. 823. The first two of those cases hold that the satisfaction of an indebtedness incurred for the purchase price of property for less than its face amount, the value of property meanwhile having fallen to an amount not in excess of the unpaid balance of the debt. does not result in income to the debtor. The theory upon which that principle rests is that under such circumstances "the cancellation may be regarded as no more than a retrospective readjustment of the purchase price." *Claridge Apartments Co.*, 1 T. C. 163, 173. Clearly, the cases have no application here. The petitioner's property was acquired in February 1921, and one of the mortgages covered by the 1925 consolidation agreement was dated February 28, 1921. Even if it may be inferred from those circumstances that that mortgage was made in connection with the acquisition of the property and was given to secure a part of the purchase price, there is nothing in the record to disclose the amount of the unpaid balance during the taxable years. It appears from a recital in the 1925 agreement that there then remained unpaid a balance of $552,000. The value of the petitioner's property was substantially in excess of $552,000 at all times during the taxable years. One of the factors requisite to an application of the doctrine of the *Hirsch* and *Killiam* cases is the depreciation in value of the property to a point where it does not exceed the unpaid balance of the purchase price. Thus, even if the 1921 mortgage were not further reduced after June 1, 1925, that requisite factor is not present here. Nor does the

*Pinkney Packing Co.* case support the petitioner. In substance, the holding in that case was that the acceptance by the vendor of property of a cash price lower than the credit price which the purchaser had contracted to pay did not result in income to the purchaser, since the acceptance of the lower amount in cash was in accordance with an agreement made at the time of sale. No such circumstances are present here.

The petitioner contends, further, that there was no cancellation of its indebtedness in the taxable years, since the 1925 consolidation agreement expressly provided that mortgage certificates would be accepted by the trust company at face value in satisfaction of the principal debt. The argument is that two alternative methods of meeting the obligation were thereby provided, namely, the payment of money or the delivery of certificates, that in employing the latter method the petitioner has satisfied its liability exactly in accordance with the terms of its contract, and hence that gain may not be said to have been realized. *Cherokee Co.*, 41 B. T. A. 1212, and *Ernst Kern Co.*, 1 T. C. 249, are cited in support of this point. In the first of those cases the vendor of property agreed to accept, in payment of a purchase money note and mortgage made by the purchaser, certain mortgage certificates issued by the vendor. Subsequently and in the taxable year the purchaser acquired certificates having a face value of some $71,000 at a cost of about $37,000. The certificates were transferred to the vendor and were accepted by it at face value in payment of the note and mortgage. At the time of the sale the value of the property did not exceed the total cost for which the purchaser ultimately satisfied its obligation to pay the purchase price. We said that the alternative method of payment provided in the original obligation was a factor differentiating the case from *United States* v. *Kirby Lumber Co., supra,* and *Helvering* v. *American Chickle Co.,* 291 U. S. 426. We did not, however, hold that the payment of an obligation in accordance with the terms of an alternative method can never result in gain. On the contrary, we expressly recognized that if the transaction were viewed as an exchange of property—the mortgage certificates for the real estate—taxable gain would have resulted, but for the fact that the value of the real estate did not exceed the cost of the property for which it had been exchanged. In the instant case too, there existed an alternative method of payment of the petitioner's principal obligation, but beyond that feature the situation does not resemble that involved in the *Cherokee* case. There is here no basis for considering the transaction as an exchange of property, and, if there were, it could not be said that the petitioner realized no gain, since neither the value of the real estate at the time of its acquisition nor its cost to the petitioner has been shown. Even if it be assumed

that the petitioner originally acquired its property from the mortgagee, the trust company, it was not until more than four years subsequent to that time that the alternative method of payment was created, and then only in connection with the consolidation of the earlier mortgage with a later one. The principle of the *Cherokee* case is of no aid to the petitioner.

In *Ernst Kern Co.*, *supra*, the petitioner acquired a lessee's interest in certain leaseholds, procuring the discharge of the lessee's bonds secured by mortgage on the leaseholds by the issuance of its own debentures and stock having a value lower than the face amount of the bonds discharged. We held that the petitioner had not assumed payment of the bonds, and hence that it had not discharged an obligation for less than its face amount. No question of satisfaction of an indebtedness by an alternative method of payment having been involved, that decision is not in point on the issue now before us.

There remains only the question of the effect here of the Supreme Court's decision in *Helvering* v. *American Dental Co.*, 318 U. S. 322. That decision does not purport to overrule the *Kirby Lumber Co.* case, but rather expressly recognizes it as representing a situation in which a gain in net assets through a reduction of indebtedness results in the realization of income. Cf. *Shellabarger Grain Products Co.*, 2 T. C. 75. In the *American Dental* case the cancellations resulted from the voluntary release by the creditors directly to the debtor of portions of their claims. The Court held that, the forgiveness having been gratuitous, the releases constituted gifts. In the instant case there was no direct negotiation between debtor and creditor, and there could not have been, since, strictly speaking, there was no obligation owing by the petitioner directly to the certificate holders, the rights of the latter being enforceable only through the trust company mortgagee. The certificates were dealt in on the market as property. Such situation does not contain the elements which, in our opinion, motivated the Court to hold as it did in the *American Dental* case. We think that case inapplicable here, and hold that the petitioner realized taxable income in the amounts by which the face value of the certificates surrendered exceed their cost to the petitioner.

In the determination of the deficiencies the respondent added to reported net income for 1935 and 1936 different amounts from those representing the excess of face value of the certificates over cost. The correct amounts, as established by the evidence, and concerning which there seems to be no dispute, are set forth in our findings of fact. Other adjustments to reported net income are not in issue.

*Decision will be entered under Rule 50.*