The Bulkley Building Company v. Commissioner.
Bulkley Bldg. Co. v. Commissioner
Docket No. 109679.
United States Tax Court
1944 Tax Ct. Memo LEXIS 71; 3 T.C.M. (CCH) 1127; T.C.M. (RIA) 44342; October 25, 1944
*71 I. W. Sharp, Esq., 630 Bulkley Bldg., Cleveland, O., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding is for the redetermination of deficiencies in income tax for the years 1938 and 1939 in the amounts of $5,821.62 and $3,613.80, respectively. Respondent added to petitioner's income as reported for each of the years involved the amounts of the difference between the discounted prices paid by petitioner in purchasing its own debentures and the face value thereof plus accrued interest. Petitioner assigned such action as error. Other adjustments of petitioner's income as reported were made and other errors were assigned, but because of concessions, stipulations or abandonment they are not now in controversy. Consequently, the remaining issue for determination is whether petitioner's purchases of its own debentures in 1938 and 1939 as above indicated resulted in taxable income. Findings of Fact The facts are stipulated and in so far as they are deemed necessary to a proper presentation of the issue to be determined are set forth herein. Petitioner is an Ohio corporation with its principal *72 office at 1501 Euclid Avenue, Cleveland, Ohio. Its books of account and income tax returns have at all times material herein been kept and filed on accrual basis. Petitioner filed its corporation income and excess profits tax returns with the collector of internal revenue for the 18th district of Ohio at Cleveland. The return for 1938 reported a loss of $69,433.65. The return for 1939 reported a loss of $62,062.11. Petitioner is engaged principally in the operation of a commercial and office building, the rental to lessees for operation of a theatre building and the operation through wholly owned subsidiaries of a garage building all located on property situated on Euclid Avenue in the City of Cleveland. In 1935 pursuant to a 77-B proceeding under the bankruptcy act in the District Court of the United States for the Northern District of Ohio, Eastern Division, petitioner perfected a readjustment plan for its outstanding debentures, and for leasehold bonds of a wholly owned subsidiary which were guaranteed by petitioner. Both of these issues were in default. Pursuant to this plan petitioner issued its Series A and Series B Cumulative Income Debentures, each bearing interest at the *73 rate of 6 percent in exchange for these securities. Interest was payable only to the extent of the consolidated net income of petitioner and its subsidiaries as defined in the reorganization plan. The debentures matured January 1, 1943. Any unpaid interest was to be paid at that time. During the years 1938 and 1939 these debentures were traded in on the open market. During the year 1938 petitioner purchased in the open market Series A debentures with a face value of $3,000 and Series B debentures with a face value of $4,000, plus accrued interest, at a cost to it of $2,575. In November 1938 petitioner offered to buy outstanding debentures direct from the holders. The offer was contained in the following letter which was sent to the owners of these debentures: "November 28, 1938 "To the Holders of Series A and Series B Six Per Cent. Cumulative Income Debentures of THE BULKLEY BUILDING COMPANY: "The Bulkley Building Company again has accumulated some cash beyond its requirements for operating expenses which does not represent 'net income' before interest applicable under the Debenture Agreement to payment of interest on the Income Debentures, but is referable to depreciation and *74 amortization, and which the Board of Directors feels should be used only for replacement or further improvements on the Company's properties, or for debt retirement. "During the year 1937 the Company purchased $203,200, principal amount of Debentures and Dodge Court Bonds at prices averaging approximately 30% of their principal amount. So far during the year 1938 the Company has purchased $3500 principal amount of the Debentures at prices averaging approximately 24% of their principal amount. The Board feels that approximately $50,000 more might properly be devoted to the purchase of Debentures and/or Dodge Court Bonds at this time. "Tenders of Debentures are therefore invited from all holders who would rather turn their holdings into cash at a substantial discount than await future developments with reference to the earning capacity of our properties. The Company reserves the right to reject any or all tenders, if the prices are not such as to make purchase of the Debentures seem advisable. "Last February all debentureholders were furnished with copies of a consolidated balance sheet as at December 31, 1937 and a consolidated profit and loss statement for the year 1937. "No reasonably *75 accurate estimate with reference to the results of operations for the year 1938 can be given. It may be said for your information, however, that interim figures, subject to correction and audit, show a consolidated net income for the first ten months of the year 1938 that is approximately $5700 less than similar figures for the corresponding period for the year 1937. It seems reasonable to expect that there will be some amount of 'net income' for the year 1938 distributable on March 1, 1939 on account of interest on the Income Debentures outstanding on December 31, 1938, but that the amount so distributable will be less than the 2.8% distributed on March 1, 1938. The amount of such distribution is of course dependent upon the results of operations during the remainder of the year as well as upon the rate of taxation on our real estate for the year 1938 (which is yet undetermined) and upon corrections and adjustments which may be made in connection with the audit of our books at the end of the year. * * * * *
"We are enclosing herewith two copies of a form of letter intended to be used in tendering Debentures for purchase. All tenders should be in the hands of the Company by December *76 10, 1938. All Debentureholders whose tenders are accepted will be notified by acceptances mailed on or before December 20, 1938. "Very truly yours, THE BULKLEY BUILDING COMPANY, By I. W. Sharp Secretary-Treasurer" Attached thereto was a form of an offer to sell to be used by the debenture holders which is set out below: " , 1938 "The Bulkley Building Company, 630 Bulkley Building, Cleveland, Ohio. "Gentlemen: "The undersigned is the holder of the following Six Per Cent. Cumulative Income Debentures of The Bulkley Building Company: Series Serial Number Principal Amount registered in the name of the undersigned, which Debentures (including all accumulated and unpaid interest thereon) the undersigned hereby tenders to you for purchase at a flat price of per cent. of the face amount of such Debentures, or a total of $ . This offer may be accepted by notice of acceptance in writing mailed to the undersigned at the address indicated below on or before December 20, 1938. In the event of such acceptance, the undersigned hereby agrees to mail said Debentures promptly to Central National Bank, Corporate Trust Department, Cleveland, Ohio, with authority to deliver the *77 same upon receipt of the above mentioned purchase price. "Very truly yours, (Name) (Address) "N.B. - Any person other than the registered holder of one of the Income Debentures may tender the same for purchase provided he deposits the same, with assignment duly executed by the registered holder and revenue stamps duly attached, with Central National Bank of Cleveland, with authority to deliver the same upon receipt of the price mentioned in his tender." As a result of offers made pursuant to this notice, in December 1938 petitioner purchased direct from the holders Series A debentures with a face value of $17,500 plus accrued interest at a cost to it of $8,674, and Series B debentures with a face value of $84,500 plus accrued interest at a cost to it of $41,052.50. In 1939, as the result of tenders made by the holders, petitioner purchased $28,100 face value plus accrued interest of both types of securities at a cost to it of $13,776.25. During the same year petitioner purchased debentures of both types in the open market with a face value of $58,500 plus accrued interest at a cost to it of $25,850. The debentures so purchased were held uncanceled in petitioner's treasury *78 and carried on its books as assets at their cost. No gain was shown on petitioner's books or reported in its income tax return for the year 1938 or 1939 with reference to the purchases of these debentures. In filing its income tax return for the year 1939 petitioner elected to exclude from its income a gain of $29,523.47 which it realized from its purchases in connection with its Series B debentures. This election was made under the provisions of section 22 (b) (9) of the Internal Revenue Code. Petitioner also filed with the return a "consent" to have the basis of its property adjusted in accordance with the provisions of the regulations in effect at the time of the filing of the return under section 113 (b) (3) of the Internal Revenue Code and in accordance with the provisions of Regulations 103 and instructions on Treasury Department form 982 on which the consent was filed. Respondent determined a total gain for 1939 from petitioner's purchases of both types of debentures of $80,682.20, and gave no effect to petitioner's election to exclude $29,523.47 of gains from its income. In filing its return for 1939 petitioner claimed to be and respondent concedes that it was in an unsound *79 financial condition at the time of purchase of Series B debentures referred to in the election and consent. Respondent concedes that effect should be given to the exclusion elected to be taken by petitioner, thus leaving a gain of $51,158.73 arising from petitioner's dealings in the debentures in 1939. The remaining gain was insufficient to absorb the loss of $62,062.11 reported on petitioner's return and respondent concedes that there is no deficiency for the year 1939. In computing the deficiency for 1938 respondent determined that the petitioner's purchases of its debentures had resulted in a gain of $93,991.25. Of this amount $52,273.50 was derived from purchases made as a result of tenders by the debenture holders. The balance, or $41,717.75, resulted from petitioner's purchases in the open market. Petitioner was a going concern in full control of its properties during 1938 and 1939 and paid promptly as they came due all of its current liabilities during 1938 and 1939, including such portions of its liabilities for interest accrued on its Series A and Series B income debentures as were required to be paid currently by the terms of the debentures and the debenture agreement. *80 Opinion We hold that there is no deficiency for the year 1939. This holding is based on the conceded gains of $29,523.47 from purchases of Series B Bonds and on petitioner's income tax return for that year accompanied by its election under 22 (b) (9) of the Internal Revenue Code to exclude such gains from its gross income and its consent to the reduction of its basis of property in like amount as provided in Section 113 (b) (3) Internal Revenue Code and the Regulations prescribed thereunder. On this basis also respondent concedes there is no deficiency for 1939. Petitioner agrees, of course, that a decision of no deficiency should be entered. However, it insists that we should determine whether there is a deficiency not alone on the basis above indicated but also on the facts exclusive of such election and consent. Petitioner says such further determination is necessary in order to determine whether or not the basis of its property must be reduced in conformity with sections 22 (b) (9) and 113 (b) (3) of the Internal Revenue Code and thereby prevent the burden of future litigation of the question. As we view it, petitioner contends that for 1939 there is no deficiency in tax regardless *81 of its election to exclude from income the gains on its purchases of its Series B bonds and requests that we so determine. In the event we should determine otherwise, petitioner would still claim no deficiency because of its indicated election. Our holding on the grounds stated, that there is no deficiency for the year 1939, disposes of the only question before us in respect of that year. The petitioner made its election and assuming but not deciding that the election could have been withdrawn, it was not withdrawn. Respondent concedes that it should be given effect. We have acted upon it. We will stop there. The remaining question is whether or not petitioner realized taxable gain in the year 1938 by the purchases of its income debentures. Since our decision involving petitioner's taxes for the year 1937, the Supreme Court has decided the case of Helvering v. American Dental Co., 318 U.S. 322, 87 L. Ed. 785, 63 S. Ct. 577. Petitioner contends that its purchases are nontaxable within the rule of that case. Respondent contends that there are none of the elements of a gift in these transactions which would permit petitioner to take advantage of this decision. He says that petitioner *82 was either solvent at the time the purchases were made or that petitioner became solvent after the transactions by tye release of assets from claims of creditors. In either event he contends petitioner realized a taxable gain. He argues that the American Dental Co. decision did not overrule United States v. Kirby Lumber Co., 284 U.S. 1, 76 L. Ed. 131, 52 S. Ct. 4, and Lakeland Grocery Co., 36 B.T.A. 289. He says that the purchases pursuant to tenders are not different from those consummated in the open market, that they were outright sales and not distinguishable from the other, and that they were in no sense gifts because there was ample consideration for the tender. The holders received their money immediately. He cites Fifth Avenue-14th Street Corp., 2 T.C. 516, now on appeal, in support of his position. We have found that of the gain sought to be taxed $52,273.50 was realized from purchases made as a result of direct negotiations by petitioner with its debenture holders. These negotiations resulted from letters and circulars issued by petitioner publicizing the condition of the company and inviting the holders *83 to offer their debentures for sale to petitioner at a flat price to include principal and accrued interest. We think that purchases made pursuant to these negotiations by petitioner with the holders of its debentures are within the purview of the decision in the American Dental Co. case. The surrender of the debentures under such circumstances was in part gratuitous and sufficient to make petitioner's gains on the transactions gifts within the meaning of that decision. We can not agree with respondent that any real consideration passed from petitioner to the holders of these securities. The surrender of their claims for payment of principal and accrued interest for a flat price was "a realization of something to the debtor for nothing and sufficient to make the cancellation here gifts within the statute." ( American Dental Co., supra.) On this point the petitioner's contention is sustained. The gain resulting from petitioner's purchases in the open market falls in a different category. We think that the gain from these activities is governed by our decision in Fifth Avenue-14th Street Corp., supra. In that case the *84 taxpayer purchased in the open market for less than face value certain mortgage certificates at a time when it was not insolvent. It used these certificates to discharge the face value of its mortgage indebtedness. In holding that the taxpayer realized a taxable gain in the amount by which the face value exceeded cost we distinguished the American Dental Co. case. We said: * * * In the instant case there was no direct negotiation between debtor and creditor, * * * The certificates were dealt in on the market as property. Such situation does not contain the elements which, in our opinion, motivated the Court to hold as it did in the American Dental case. In the case before as the debentures purchased by petitioner in the open market were certainly dealt with as property. There were no direct negotiations between petitioner and the owners and there were no other factors which would permit the application of the rule in the American Dental Co. case. As we view that decision, to come within its scope there must be a personal element of bargaining and negotiating whereby one party gratuitously waives a portion of its claim in order to effect a settlement. Petitioner's *85 transactions in the open market were impersonal. The debentures were dealt with in the same manner as any other commodity or security. The personal element, we think necessary to make a gift within the meaning of the American Dental Co. case, were absent. Accordingly, we hold that the $41,717.75 by which petitioner benefited through its purchases in the open market resulted in income. The extent to which it is taxable depends on the financial status of petitioner during the year 1938, before and after these purchases. United States v. Kirby Lumber Co., supra;Lakeland Grocery Co., supra;Rufus S. Cole, 42 B.T.A. 1110. If we took the view most favorable to respondent and found that petitioner was solvent at all times during the taxable year, the gain of $41,717.75 would not produce any taxable income for that year. The operation of petitioner would still show a loss. For that reason we will not prolong this opinion by discussing the financial condition of petitioner at the time these purchases were made. It is apparent that no matter how we decide this question there will be no tax due. Decision *86 of no deficiency will be entered.