LEWIS F. JACOBSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4189.  Promulgated May 10, 1946.

*Sidney C. Nierman, Esq.,* for the petitioner.
*David F. Long, Esq.,* for the respondent.

## OPINION.

BLACK, *Judge*: The main issue in this proceeding, which is common to all three of the taxable years, is whether petitioner is taxable on the difference between the face value of certain bonds upon which

he was liable as the issuer and the price for which he purchased some of these bonds during each of the taxable years. The facts as to the amounts of such bonds purchased and the price which was paid for them are not in dispute. The controversy between the parties concerns itself only with the manner, form, and effect of the purchases.

It is respondent's contention that it is a case controlled by *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and petitioner is taxable on all the gain realized. On the other hand, petitioner contends that the bonds were all purchased under such circumstances and arrangements with the creditors as to bring the case within Supreme Court's decision in *Helvering* v. *American Dental Co.*, 318 U. S. 322, a later case than *Kirby Lumber Co.* We have endeavored to set out in our findings of fact a full statement of the facts and circumstances connected with each purchase in each of the taxable years. We shall not repeat those facts here. Suffice it to say the facts show that some of the bonds were acquired by petitioner through direct conferences and negotiations between him and the bondholders, with whom he was acquainted. These conferences were either between petitioner and the bondholders personally or between petitioner's half-brother and law partner, Sidney Nierman, representing petitioner, and the bondholder. As to these purchases, we hold that the doctrine of the *American Dental Co.* decision applies and petitioner is not taxable on that part of the gain which the Commissioner has determined.

The facts also show that petitioner acquired a number of the outstanding bonds through R. W. Gerding, secretary of a bondholders' committee, and through two security houses in Chicago and paid commissions on such purchases. As to those bonds, we think the situation is analogous to that in *Fifth Avenue-14th Street Corporation*, 2 T. C. 516, where the taxpayer acquired certain of its debentures at discount figures on the open market. As to such purchases, we held that the doctrine of *American Dental Co.* did not apply.

It is petitioner's contention in the instant case that there was no open market for the sale of his bonds. It is true that there was no open market for the bonds in the sense that they were bought and sold on any securities exchange or in an over-the-counter market. However, the manner in which petitioner acquired a number of his bonds through R. W. Gerding, secretary of the bondholders' committee, and through the security dealers, Anderson, Plotz & Co., and through McGraw & Co., bears close resemblance to purchase in the open market, if, indeed, it does not properly fall within that classification. As to these purchases, the personal element we think necessary to make a gift within the meaning of the *American Dental Co.* case was absent.

As an example of what we mean by the above statement, one of the transactions involved in the instant case was the purchase by petitioner, through R. W. Gerding, secretary of the bondholders' committee, of $2,700 face value of bonds owned by Edna Mary Griffin at 40 cents on the dollar, amounting to $1,080. Petitioner paid Gerding $27 for making this purchase in his behalf and claims that we should not recognize the gain to him, under the doctrine of the *American Dental Co.* case, *supra*. With reference to this transaction, George D. Griffin, husband of Edna Mary Griffin, testified on behalf of respondent. His testimony in substance was that he had practiced medicine in Chicago, Illinois, for 37 years; that he had custody of his wife's bonds, kept them in a vault, and always represented his wife in bond transactions; that he negotiated the sale in question with the bondholders' committee and received for the bonds 40 cents on the dollar flat. He further testified he was not acquainted with the petitioner and probably had never seen him before. While Griffin was the only witness called by respondent to testify as to any particular bond transaction, we think this testimony is illustrative of the nature of the purchases which were made for petitioner's account by Gerding and by the two firms which were dealers in securities. On the basis of the evidence in the record, we can not hold that these purchases fall within the ambit of the *American Dental Co.* case. Therefore, applying what we have said above to petitioner's bond purchases for each of the respective taxable years, we make the following holdings:

As to 1938 petitioner has proved that all the bonds which he purchased in that year were after direct negotiations and agreements with the bondholders. He did not purchase through any third party and paid no commissions or other fees. We hold that the doctrine of the *American Dental Co.* case applies to these purchases.

As to 1939, only $450 face value of the bonds purchased in that year for $225 falls within the above classification. This purchase was made by petitioner after direct negotiation with the owner of the bond, Dolly Stoecker. All the rest of the purchases which petitioner made in 1939 were either through R. W. Gerding, secretary of the bondholders' committee, or through the two dealers in securities which we have named in our findings of fact. In each instance, save one, in making these purchases petitioner paid a fee to the one making the purchase in his behalf. For reasons already stated, we hold that petitioner is taxable on the gain which the Commissioner has determined resulted from these particular purchases, except the one made direct from Dolly Stoecker.

As to 1940, the evidence shows that all the purchases made by petitioner in that year were made either through R. W. Gerding, secretary

of the bondholders' committee, or through Anderson, Plotz & Co., security dealers. In each instance petitioner paid a fee to the one acting for him in making the purchase. No bonds were purchased in 1940 by petitioner in dealing directly with the owners. Therefore, for reasons already stated, we sustain the Commissioner as to all purchases in 1940.

Petitioner contends, in the alternative, that at the time he purchased said bonds he was insolvent and that he was still insolvent after the purchases were made, citing *Dallas Transfer & Terminal Warehouse Co. v. Commissioner*, 70 Fed. (2d) 95. It requires no citation of authorities, of course, that in establishing this contention the burden of proof is on petitioner. We think he has failed to sustain that burden. It is true that petitioner did establish by the evidence that there had been considerable decline in the value of property which he owned and in the revenues which it had been producing, but petitioner failed to establish to our satisfaction that he was insolvent. In fact, we think that the weight of the evidence establishes that he was solvent in each of the taxable years, and we have so found. Considering the property in question against which the bonded indebtedness existed, it yielded petitioner a small net income in each of the taxable years, after all expenses, depreciation, and the interest on the bonds were deducted. Also, petitioner had considerable net income in each of the taxable years from his law practice, as shown in our findings of fact.

We hold, after considering all the evidence, that petitioner was solvent in each of the taxable years and that the doctrine of the *Dallas Transfer & Terminal Warehouse Co.* case, *supra*, has no application. Petitioner's alternative contention is not sustained.

*Entertainment Expenses for Clients and Employees.*

The testimony of petitioner is to the effect that in each of the taxable years 1939 and 1940 he drew $2,850 from his law firm to defray certain personal expenses of his own, such as taking meals downtown while working at nights and expenses of entertaining clients and employees of the firm. Petitioner testified that he expended not more than $1,000 of this amount in each of the taxable years for his own meals, tips, etc., and that the balance was expended in entertaining customers and in paying for lunches and suppers of employees of the firm for which he was not reimbursed by the firm. While petitioner in effect claims that he spent $1,850 in each of the taxable years for these purposes, he only claims a deduction of $750 in each of the taxable years 1939 and 1940 therefor. Petitioner did not keep any record of separate items of these expenditures. However, he has testified at

length as to them and as to the circumstances under which he made them, and we are convinced that he expended at least $750 for these purposes, and we have so found in our findings of fact.

In a computation under Rule 50 the Commissioner should allow petitioner a deduction of a total of $750 in each of the taxable years 1939 and 1940 for these entertainment expenses. Of this amount, we do not know how much the Commissioner has already allowed in his determination of the deficiencies. The detailed statement which usually accompanies the deficiency notice is not attached to the petition. Some of the statement is attached, but the details which show the adjustments that the Commissioner has made have been omitted from the statement.

### Automobile Expenses.

The uncontradicted evidence in the record is that petitioner expended $1,030.04 in the operation of his automobile during 1939 and $1,051.66 in 1940 for the same purpose. Petitioner claims that at least two-thirds of these expenditures was incurred in the firm's business, for which he was not reimbursed, and that not more than one-third was incurred in operating the automobile for the personal use of petitioner and his family. Respondent's contention is that petitioner kept no record of his automobile expenses, except as to amounts expended for all purposes, and that he fails, for a lack of evidence, to support the deductions which he claims.

We have carefully examined and considered petitioner's testimony as to these automobile expenses and have decided that one-half of the total amount expended in 1939 and 1940 should be attributed to personal expenses, which are not deductible, and one-half should be attributed to use for business purposes, which are deductible. Apparently the Commissioner in his determination of the deficiencies has allowed as a deduction one-third of these expenses and has disallowed two-thirds. In a recomputation under Rule 50 one-half of such expenses should be allowed as a deduction and the other one-half should be disallowed because incurred for petitioner's own personal benefit and convenience and that of his family. Cf. *Albert Nelson*, 6 T. C. 764.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

SMITH, *J.*, dissents.

---

KERN, *J.*, dissenting: In its opinion in *Helvering* v. *American Dental Co.*, 318 U. S. 322, the Supreme Court cited, with approval, *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and unmistakably indicated

that it considered that the two cases were distinguishable. I submit that the majority opinion is in error in finding the distinction to be the impersonal character of the transaction and in applying to the facts of the instant case the sole criterion of whether "the bonds were acquired by petitioner through direct conferences and negotiations between him [taxpayer's agent] and the bondholders with whom he was acquainted," for the purpose of determining whether the doctrine of the *American Dental Co.* case or the doctrine of the *Kirby Lumber Co.* case should be controlling.

The true point of distinction between the two cases is, to my mind, found in the following language in the *American Dental Co.* opinion:

* * * Gifts however, is a generic word of broad connotations * * *. Its plain meaning in its present setting denotes, it seems to us, *the receipt of financial advantages gratuitously.*

* * * * * * *

* * * The fact that the motives leading to the cancellations were those of business, or even selfish, if it be true, is not significant. *The forgiveness was gratuitous, a release of something to the debtor for nothing and sufficient to make the cancellation here gifts within the statute.* [Emphasis supplied.]

Thus, the criterion to be applied in determining whether the *American Dental Co.* case or the *Kirby Lumber Co.* case controls the transactions here in question is not whether the bonds were acquired by petitioner through direct conferences and negotiations with bondholders who were personal acquaintances, but whether the acquisition of these bonds by petitioner at prices below their face value constituted "the receipt of financial advantages gratuitously," so that it might be said that "the forgiveness [of the excess of the face value over the price paid] was gratuitous * * * and sufficient to make the cancellation here gifts within the statute."

Applying the criterion of distinction to the facts of the instant case, it is apparent that none of the transactions here in question was gratuitous. Petitioner's bonds which he acquired were not payable until 1942. He purchased them in 1938, 1939, and 1940 by paying to the bondholders an amount smaller than the amount which he would have been obliged to pay if the bonds had been held until maturity. The payment of a part of a debt before it is due constitutes consideration which will support a promise of the creditor to waive or forgive the balance of the debt. See *Crowe* v. *Gore*, 85 Fed. (2d) 291, 294; Williston on Contracts, Rev. Ed. 1936, vol. 1, sec. 121. Since a consideration existed by reason of the equivalent of the payment of an obligation before maturity, the transactions can not be considered as gratuitous within the meaning of the *American Dental Co.* case, regardless of the fact that petitioner's officers were personally acquainted with the bondholders who received these payments.

The majority opinion appears to go on the theory that all transactions carried on directly with personal acquaintances must be gratuitous. It is my opinion that, while all gratuitous transactions will normally be carried on directly between personal acquaintances, not all transactions carried on directly between personal acquaintances are gratuitous. The instant case is an example.

To make the tax consequences to petitioner of the acquisition of his bonds before maturity at less than their face value depend on each case of acquisition of a bond solely upon the degree of acquaintance shown to exist with the particular bondholder and the personal or impersonal character of the negotiations leading to their acquisition, is to give an effect to the *American Dental Co.* decision which, in my opinion, was not intended by the Supreme Court and which its opinion does not compel.

It may also be pointed out that the basic facts here presented show a typical *Kirby Lumber Co.* case: The borrowing of money, the issuance of bonds to evidence the indebtedness thereby created, and the acquisition of these bonds by the debtor from the bondholders for payments less than those called for on the face of the bonds, at a time when the value of the assets of the debtor was in excess of his liabilities. Such a state of facts can not be said to be analogous to "a reduction of sale price" to be "treated as a readjustment of the contract rather than as a gain." The Supreme Court said in the *American Dental Co.* case:

\* \* \* In *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, the taxpayer purchased its own bonds at a discount. It was held taxable on the increase in net assets which resulted.

It later used language in its opinion which may be construed as characterizing the *Kirby Lumber Co.* case as one of "financial betterment through the purchase by a debtor of its bonds in an arm's length transaction." If we combine the two characterizations, we find the Supreme Court considering the *Kirby Lumber Co.* case as one in which the debtor corporation purchased its own bonds in an arm's length transaction at a discount and thus bettered itself financially. The instant case can be accurately described in exactly the same words. Only by distorting the meaning of "an arm's length transaction" can this case be distinguished. It is impossible for me to believe that the Supreme Court intended the words "an arm's length transaction" to exclude those transactions carried on "through direct conferences and negotiations" between the officers of the debtor corporation and bondholders with whom they happened to be personally acquainted.

TURNER, LEECH, ARNOLD, and HARLAN, *JJ.*, agree with this dissent.