New York Trap Rock Corporation v. Commissioner.
New York Trap Rock Corp. v. Commissioner
Docket No. 11400.
United States Tax Court
1949 Tax Ct. Memo LEXIS 199; 8 T.C.M. (CCH) 436; T.C.M. (RIA) 49107; May 5, 1949
Joseph Diehl, Fackenthal, Esq., 230 Park Ave., New York, N. Y., for the petitioner. Clay C. Holmes, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the year *200 1939 in the amount of $19,902.95. That deficiency resulted from the disallowance of certain items which were deducted in the return. Petitioner now concedes that disallowance of the deductions was correct. However, in its petition, the petitioner has claimed that it erroneously included in its income for 1939, as reported in its return, the total amount of $46,182.43, which is the difference between the face amount of its indebtedness on bonds, and the sum paid when it purchased bonds from bondholders in 1939 upon payment of less than its obligation. Petitioner, upon this contention, seeks to have its income tax liability for the year 1939 redetermined. Petitioner filed its return in New York City with the collector for the third district of New York. All of the facts have been stipulated. Findings of Fact The facts are found as stipulated. The stipulation of facts is incorporated herein by this reference. Petitioner is a New York corporation, having its principal place of business in New York City. It is engaged in the business of marketing and making crushed stone and related products. In 1927, petitioner issued and sold First Mortgage Six Per Cent Sinking Fund Gold *201 Bonds in the principal amount of $6,500,000. The bonds were secured by a mortgage under an indenture of trust of which The Chemical National Bank of New York was trustee. The bonds were due and payable on December 1, 1946. Through the operation of the sinking fund and otherwise, $1,706,500 principal caount of bonds were retired and cancelled, so that on January 1, 1935, there were outstanding $4,793,500 principal amount of bonds. Of that amount $1,000 of bonds was held by petitioner in its treasury. On January 1, 1935, also, sinking fund payments were in default in the amount of $500,000. In order to provide for curing this default under the mortgage indenture agreement, a plan of readjustment was worked out with the bondholders, as of January 1, 1935, and with the trustee, under which contain bondholders assented to waiving the default in the sinking fund payments. The holders of bonds in the principal amount of $4,068,000 entered into the agreement, and their bonds were stamped and made subject to the terms of the agreement. Bondholders who did not subscribe to the agreement did not submit their bonds, and such bonds became known as the "Unstamped Bonds." On May 23, 1939, there *202 were outstanding $3,745,500 of Stamped Bonds, and $685,500 of Unstamped Bonds, the aggregate amounting to $4,404,000 principal amount. Under the agreement to cure the defaults in sinking fund payments (the agreement of January 1, 1935) it was agreed inter alia that petitioner would pay to the bondholders who came into the agreement, in addition to the six per cent interest, additional interest out of net earnings at the cumulative rate of one per cent per annum, pari passu, with dividends on common stock of petitioner; and any deficit in the additional interest was to be paid at the maturity or redemption of the bonds. These additional interest payments on the bonds were called "participation dividends" and were to be paid under "participation warrants" which were to be annexed to the Stamped Bonds. On May 23, 1939, interest had been duly paid on all of the outstanding bonds. "Participation dividends" aggregating one-fourth of one per cent had been paid on the Stamped Bonds. On May 9, 1939, petitioner's board of directors adopted resolutions authorizing the officers to borrow $500,000, and to set aside $100,000 (total $600,000) which was to be used for the purchase of the First *203 Mortgage Bonds, Stamped and Unstamped, and of the corporation's Ten Year Seven Per Cent Debentures (another issue which is not material to the issue in this proceeding); and authorizing the Executive Committee to purchase the First Mortgage Bonds and the debentures from time to time in its discretion, "at such price or prices (whether higher than current market quotations at the time or otherwise) as to the Committee may seem wise," expending the borrowed monies for that purpose. On May 23, 1939, the Executive Committee determined that it was expedient at that time to purchase as large an amount of the outstanding First Mortgage Bonds, Stamped or Unstamped, as it might be possible to purchase at prices satisfactory to the corporation; and that the purchases of bonds should be undertaken through a request for tenders of bonds to the holders of record, made on behalf of the petitioner through bankers or brokers having membership in the New York Stock Exchange; and that the firm of Smith, Barney & Co., should be appointed petitioner's agent to act in pursuance of the provisions of the Request for Tenders for the purchase of bonds. Several resolutions were adopted on May 23, 1939, which *204 authorized certain arrangements for having Smith, Barney & Co. mail to all of the holders of the First Mortgage Six Per Cent Bonds the request for tenders and the form of tender to be used, and authorizing the payment to Smith, Barney & Co. of its expenses and a fee of one-half of one per cent of the principal amount of all bonds purchased by petitioner pursuant to the tenders. Smith, Barney & Co. accepted the agency for procuring tenders of bonds for purchase by petitioner. The Request for Tenders stated that the purpose of the proposed purchase of bonds was for the cancellation of the purchased bonds in order to reduce the petitioner's outstanding funded debt and interest charges; and that the terms of the tenders which were invited were, inter alia, as follows: "1. Tenders were to be made to Smith, Barney & Co. before June 26, 1939; and tenders would be opened and notices of acceptance or rejection mailed on or before June 29, 1939. "2. All bonds tendered must have attached all coupons, and Participation Warrants in the case of stamped bonds maturing December 1, 1939, and subsequently. Coupons and Participation Warrants due June 1, 1939, should be detached and presented *205 for payment in the usual manner. "3. Bonds should be delivered for payment on or before July 10, 1939, beyond which date interest will not be paid to holders of purchased bonds. * * *
"5. Smith, Barney & Co. reserved the right to reject any and all tenders, in whole or in part, in their discretion or as instructed by New York Trap Rock Corporation (petitioner)." Petitioner caused to be published at its own expense, twice, in the New York Times and the Wall Street Journal, the Request for Tenders. Smith, Barney & Co., in the Request for Tenders, set forth the range of the prices of the bonds on the New York Stock Exchange, high and low prices, during 1938, and during 1939 to May 25, 1939; and the total volume of sales on the New York Stock Exchange during the above periods of the Stamped and Unstamped Bonds. On May 18, 1939, the date of the last sale prior to May 25, 1939, the Stamped Bonds sold on the New York Stock Exchange at 76 1/2; and on April 25, 1939, the date of the last sale prior to May 25, 1939, the Unstamped Bonds sold at 75. Replies were received to the request for tenders from bondholders offering to sell an aggregate of $669,000 principal amount of bonds. *206 Tenders as to $176,000 of bonds were rejected, and tenders as to $493,000 of bonds were accepted. Those tenders which were accepted and pursuant to which bonds were purchased by the corporation, were individually marked and signed as accepted on behalf of the corporation by one of its officers. The average prices per one thousand which the petitioner paid for the Stamped Bonds and for the Unstamped Bonds, respectively, were $920.53 and $877.36. The principal amount of the bonds of each class which the petitioner purchased and the total amounts which petitioner paid were as follows: Principal
Purchase
1st. Mtge. 6% Bonds
Amount
Price
Stamped bonds
$460,500
$423,902.75
Unstamped bonds
32,500
28,524.82
Total
$493,000
$452,427.57
The difference between the total purchase price and the total principal amount of the bonds was $40,572.43. According to the terms of the tender, the price at which a bond was tendered to petitioner for sale did not include interest, but interest at the rate of six per cent from June 1, 1939 to July 10, 1939, or earlier purchase date, was to be paid in addition to the price stated in the tender. Nothing was paid on account *207 of the Participation Warrants upon the purchase of the Stamped Bonds under the tenders. The total of the Participation Dividends accumulated from January 1, 1935 to December 31, 1938, on the $460,500 Stamped Bonds which were purchased pursuant to tenders, was $18,420. Of this total amount, $1,151.25 had been paid upon maturity of Warrant No. 4, maturing December 1, 1936, leaving a balance of accrued debt of $17,268.75. Of these accruals, $11,648.75 which had been accrued upon petitioner's books was included as a deduction in petitioner's tax returns for prior years (in which petitioner had suffered loss) leaving $5,610 of accrued unpaid Participation not heretofore excluded from taxable income. None of the bonds so purchased was ever resold or reissued by petitioner. All of them were surrendered to the trustee and were cancelled. Except for interest which had accrued prior to the purchase of the bonds, no payment other than as above noted was made to the holders of or on account of the purchased bonds. At the time when tenders of bonds were requested, as above stated, and at the time of the purchase of bonds pursuant thereto, petitioner was at all times in a solvent condition. *208 Petitioner was also in a solvent condition at the time of the surrender for cancellation and retirement of the bonds so purchased, and was also in a solvent condition at the time and immediately following the cancellation of said bonds. Petitioner did not seek to take advantage of section 22 (b) (9) of the Internal Revenue Code and did not file any statements, applications or documents under or pursuant to said section. The holders of $493,000 principal amount of stamped and unstamped bonds sold them to petitioner in 1939 for the total amount of $452,427.57, which amount constituted the most which they could obtain for their entire claim under the bonds. The holders of the bonds did not agree to release petitioner from part of its obligation with respect to the payment of the principal amount of the bonds, or from its obligation to pay accrued "participation dividends" on the stamped bonds. Opinion Petitioner contends that the difference between the principal amount of the unstamped bonds and the price paid, in the one instance; and the difference between the principal amount of the stamped bonds plus the accrued but unpaid additional interest which was *209 called "participation dividend," and the price paid, in the second instance, constituted a forgiveness of indebtedness to petitioner by the bondholders who tendered their bonds to petitioner for purchase in 1939; and that such differences, totalling $46,182.43, constituted "gifts" of the bondholders to petitioner within the meaning of section 23 (b) (3) so as to be exempt from income tax. Petitioner has relied solely upon Helvering v. American Dental Co., 318 U.S. 322, and the decision of this Court in Lewis F. Jacobson, 6 T.C. 1048, (reversed in part, 69 S. Ct. 358, upon the transactions under which the taxpayer acquired bonds through direct negotiations with the bondholders, wherein we applied the rule of the American Dental Co. case. In Commissioner v. Jacobson, 69 S. Ct. 358, the Supreme Court has set forth the tests to be applied where the debtor under bonds reacquires them by purchase from the holders thereof for less than the principal amounts, and has stated that "The first test of the taxability of such gains relates to their inclusion within the gross income of the taxpayer under § 22 (a), without reference to the specific *210 exclusions made from it by § 22 (b)"; and that the exemption provisions "should be construed with restraint" in the light of the sweeping terms of section 22 (a). Since the petitioner has taken the view in its brief that the facts in this proceeding are "on all fours" with the transaction in the Jacobson case wherein the taxpayer bought bonds at a discount through direct negotiations with the bondholders, and since the recent decision of the Supreme Court in the Jacobson case reverses the holding of this Court in the Jacobson case upon which the petitioner relies, and makes it clear that the rule of the American Dental Co. case does not apply to the facts which are presented in this proceeding, it follows that the petitioner is not entitled to the relief which it seeks. We recognize that it is stated in the Jacobson case, by the Supreme Court, that the question in each case may depend upon whether "additional facts brought them [the gains] under some other exemption." Therefore, we have examined carefully the facts in this proceeding to ascertain whether the transactions involved fall outside the wide scope of section 22 (a) into the exemption area of section 22 (b) (3). *211 The crucial facts are that in the corporate resolutions authorizing petitioner's executive committee to purchase bonds for cancellation, the committee was authorized to purchase bonds of the corporation at such prices "as the Committee might deem wise," whether higher than the current market prices, or otherwise; and that in the request for tenders, Smith, Barney & Co., agents, reserved the right to reject any and all tenders, in their discretion, or as instructed by the corporation; and that tenders as to $176,000 principal amount of bonds were rejected. Also, the average price paid for the stamped bonds, upon which some "participation dividends" had accrued at the rate of one per cent, but had not been paid, was $43 higher than the average price which was paid for the unstamped bonds, from which it is reasonable to conclude a "premium," or additional amount, was paid for the stamped bonds with accruals. From the above essential facts, it must be concluded that petitioner purchased the bonds in question at the best prices it could obtain at the time, under the tenders, and that the holders of the bonds sold them at the best prices which they could obtain. There is no evidence *212 that the bondholders surrendered their bonds, either the stamped bonds or the unstamped bonds, to petitioner with any intent of "forgiving" petitioner any of its obligations with respect to the bonds, including the accrued "participation dividends" on the stamped bonds. It has been found as a fact, upon the evidence which is before us, that the holders of the bonds sold them to petitioner for the best prices which they could obtain for their entire claims. We cannot perceive from any of the facts before us that the bondholders released anything to the petitioner for nothing so as to make the differences between the principal amount of the bonds and the accrued "participation dividends," where such had accrued, and the amounts received by the bondholders "gifts" to the petitioner. The rationale of Commissioner v. Jacobson, supra, clearly applies to this proceeding. Therefore, the contentions of the petitioner are denied. Decision will be entered for the respondent.