OPINION. Arundell, Judge-. The only issue in this proceeding involves the taxability of income derived in 1944 from partnership interests which were conveyed by Stanton and Springer to trusts established by them for the benefit of members of their immediate families. In the case of both Stanton and Springer, all right, title, and interest in and to their respective partnership interests passed irrevocably to the trust each established. The trust instruments conferred on each in his fiduciary capacity as sole trustee full and unlimited control and dominion over the interest conveyed. The record discloses that, following the creation of the trusts, Stanton, Springer, and Burdick, as trustees, immediately entered into a new partnership agreement for the term of one year with Adams and Leahy, continuing without interruption the operation of the business in the same manner as it had been conducted prior to the transfer of their interests to the trusts. In taxing to the petitioners the $63,111-80 received by each trust from the Feed Sales Co. in 1944, respondent claims that his determination may be supported by either of two established tax principles. Relying upon the rationale of Helvering v. Clifford, 309 U. S. 331, the respondent contends that Stanton and Springer retained such effective control and dominion over the trust corpora, consisting of their respective partnership interests, that they were in substance, even after executing the trust agreements, still partners in the firm. Respondent submits, as an alternative argument, based upon cases such as Lucas v. Earl, 281 U. S. 111, and Helvering v. Horst, 311 U. S. 112, that the income distributed to the trusts was taxable to Stanton and Springer because they were the persons who in reality earned the income of the partnership. The petitioners challenge the respondent’s determination, contending that in establishing the trusts Stanton and Springer divested themselves of every material attribute of ownership in the partnership interests Conveyed. In support of the argument that this feature defeats their tax liability for the trust income, the petitioners rely on cases such as Simmons v. Commissioner, 164 Fed. (2d) 220; Henson v. Commissioner, 174 Fed. (2d) 846; Clifford R. Allen, Jr., 12 T. C. 227.. The fact that Stanton and Springer, in creating the trusts in question, completely surrendered all ownership of their partnership interests is not controlling. Where income is derived from capital, the tax liability for such income follows ownership. Harrison v. Schaffner, 312 U. S. 579; Helvering v. Horst, supra; Helvering v. Clifford, supra. Where income flows from labor, the issue is, Who “earned” the income? Commissioner v. Tower, 327 U. S. 280; Doll v. Commissioner, 149 Fed. (2d) 239; Helvering v. Horst, supra; Lucas v. Earl, supra. Where the income stems from combined labor and capital, the test is the personality who or which “produced” the income. Doll v. Commissioner, supra; Burnet v. Leininger, 285 U. S. 136. In our opinion, the facts of the instant case bring it within the third category and narrow the question presented to one involving a determination of the persons or elements responsible for the production of the income respondent seeks to tax to Stanton and Springer. The record is replete with evidence that the income of the Feed Sales Co. was primarily due to the personal efforts of its five original partners and the use to which they put the capital invested rather than the capital contribution each made upon the formation of the partnership. Their contacts and experience in the industry, and the fact that the principal occupations of at least four of the five partners involved the purchase or sale of the products handled by the partnership were the factors primarily responsible for the unusual success of the business. The relative unimportance of capital is best illustrated by the fact that the five original partners contributed only $500 in establishing the business. Coarse flour, which was used in large quantities by distillers in the manufacture of alcohol, was handled by the partnership on a straight brokerage basis. Apparently the only occasion upon which the business found it necessary to raise additional capital was early in its existence, when it borrowed $35,000 from the Red Wing Malting Co. to finance the first purchases of millfeed. Payment for the goods it sold was customarily received by the partnership within 4 or 5 days and the particular loan from the Red Wing Malting Co. was discharged within 30 or 45 days thereafter. At the time the trusts in question were established, the business, had sufficient cash accumulated to finance all purchases of millfeed on its own account. Moreover, the partnership had no employees or offices of its own, but instead shared those employed by the Red Wing Malting Co. and Stanton’s individual brokerage business. It had no tangible assets other than miscellaneous office furniture, cash on hand, and accounts receivable. It is also interesting to note that the original capital contribution of Hall Adams, the only partner whose principal occupation was wholly unrelated to the business of the partnership, was 5 per cent of the total paid-in capital of $500, in contrast to the 23.75 per cent interest held by each of the other four partners. However, on this nominal investment of $25, Adams realized distributable profits from the business of $13,294.26 in 1944. The relation of the percentage of profits realized to the amount of capital committed is further evidence of the unimportance of capital in the business as compared with the ability, experience, and business acumen of the partners themselves. Petitioners contend that the Feed Sales Co. was not a personal service business, arguing that the participation of Stanton or any of the other partners was not essential to its continued success. They point out that the demand for the products it handled far exceeded the supply and that the principal task was not to locate purchasers, but to effect an equitable distribution of the available supplies among its many customers. This evidence, in our opinion, does not establish the fact that the partnership was not a personal service business but, at most, shows that the artificial demand created by war conditions did not require the partners to devote the care and attention to the business which would have been necessary under normal economic conditions. Nor do we consider the circumstance that Stanton received a salary of $7,200 from the partnership during the taxable year as controlling of the issue herein. In cases analogous to this, we have disregarded the fact that a salary was paid to the transferor or to an independent manager where the evidence indicated that the transferor in substance continued to be the person responsible for the production of the income flowing from the property conveyed. Cf. J. H. Henson, 10 T. C. 491 (reversed, Henson v. Commissioner, supra); Robert E. Werner, 7 T. C. 39. In conveying their partnership interests to the trusts in question, both Stanton and Springer invested themselves, as trustees, with the fullest possible control over the trust property; specifically, to do all such acts, take all such proceedings and exercise all such rights and privileges with relation to the property as if they were the absolute owners thereof. The reservation of such powers and the naming of themselves as trustees, in our opinion, is clear evidence that neither Stanton nor Springer intended the transfers to 'result in the withdrawal of' the partnership interests from the business or the introduction of outside parties into the management of its affairs. The trust instruments preserved the right of each to participate in the control and management of the partnership to the same extent as if he were still the actual owner of the partnership interest. In short, the execution of the trust instruments effected no substantial change in the business or the relation of the parties to it other than the bare transfer of-the ownership of Stanton’s and Springer’s partnership interests from themselves as individuals to themselves as trustees. Had the income in question been derived primarily from the ownership of the interests so conveyed rather than from the use or employment of such interests, the tax consequences for which the petitioners contend might well have followed. Moreover, Stanton’s and Springer’s conveyance of their respective partnership interests to the trusts did not deprive them of the opportunity to recapture the going business at a later date. The partnership agreement under which the trusts came into the business as partners was only for the term of one year. Although this original agreement was extended in January, 1945, for an additional year, it is interesting to note that all three trusts withdrew from the partnership within a short time after the death of Springer in January, 1946, and the business was thereafter continued by a new partnership, consisting of Stanton, Burdick, Adams, and Leahy, under the same name of Feed Sales Co. In our opinion, all of -the evidence herein leads irresistibly to the conclusion that the $63,147.80 paid over by the Feed Sales Co. to the Stanton and Springer trusts in 1944 was “produced” by the concerted efforts of the five original members of the partnership through their unique knowledge, experience, and contacts in the industry. Here, as in Robert E. Werner, supra, the bare legal title to the property involved was not the essential element in the production of the income under the circumstances shown. The law is now well established that income is taxable to the person or persons who earn it and that such persons may not shift to another or relieve themselves of their tax liability by the assignment of such income, whether by a gift in trust or otherwise. Lucas v. Earl, supra; Helvering v. Horst, supra; Dolly v. Commissioner, supra; Robert Lubets, 5 T. C. 954 (appeal dismissed, CCA-1); Louis Visintainer, 13 T. C. 805; cf. Albert Nelson, 6 T. C. 764; Hogle v. Commissioner, 132 Fed. (2d) 66. Therefore, the respondent’s determination, that the net incomes of Stanton and Springer for 1944 should each be increased by the amount of $63,147.80 representing the profits paid by the partnership to each trust, is sustained. Our decision herein makes it unnecessary to treat the question of whether trust income in 1944 is taxable to the petitioner under the principles of Helvering v. Clifford, supra. However, our conclusion would be the same regardless of the fact that the trust instruments might be regarded as effecting a complete and irrevocable disposition of the partnership interests of Stanton and Springer within the meaning of the Clifford doctrine. Decisions inill be entered under Rule 50.