WILLIS H. VANCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19958. Promulgated June 15, 1950.

*J. Louis Warm, Esq.*, for the petitioner.
*W. Herdman Schwatka, Esq.*, for the respondent.

## OPINION.

ARNOLD, *Judge*: Respondent's theory is that the partnership formed in 1938 by Willis H. Vance and William S. Bein continued to operate the theatres during the taxable years. He contends that petitioner had so organized, built up, and established the two theatres by 1943 and 1944, that he did not need to devote the time to their operation that he formerly gave them. He contends that petitioner, as general manager, made all withdrawals from the partnership bank accounts during the taxable years. He contends that neither of the wives contributed capital originating with her or rendered managerial or any other services in operating the partnership business, and that William S. Bein at no time contributed other than capital to the enterprise.

Petitioner's theory of the case is that the original partnership, composed of the husbands, was dissolved in December, 1942, and was succeeded by a new partnership, composed of the wives. It is his contention that he made a gift of his entire interest in both theatres on December 30, 1942, to his wife, that his partner did likewise, that the wives formed a partnership venture of their own, to which each contributed, as capital, an undivided 50 per cent interest in the Ohio and State theatres, and operated the theatres themselves through their employees, that petitioner relinquished control over the partnership assets and was but an employee of the new partnership, not a partner, and that any income subsequently produced therefrom was not attributable or taxable to him.

The first question to be determined is whether a bona fide gift of income-producing property was made by petitioner to his wife in December, 1942. If the gift was bona fide, then under the facts and circumstances of this case all the rights and incidents of full and complete ownership vested in the donee, including the right to the income produced by such property. These principles are so fundamental that citation of authority is deemed unnecessary.

Our findings show that failures in his promotions had seriously embarrassed petitioner and his family prior to 1942. After 1938 he had again established himself in the moving picture theatre business, but his various promotional schemes made his wife apprehensive of the family's financial security. The testimony is uncontradicted that the gift was made to secure his family against want, in view of his contemplated future borrowings for promotional purposes. Petitioner had overextended himself on several previous promotions and he and his wife had discussed his promotions in the light of the financial

security of the family. The assets transferred had proved profitable investments in prior years. The profits therefrom would assure his family against want. His attorney advised him to protect his family by making the gift. Petitioner's intention to make the gift can not therefore be doubted.

The steps that petitioner took to complete the gift are illuminating. He and his coowner brought about the dissolution of the Ohio corporation. Petitioner then assigned all his right, title, and interest in the corporate assets to his wife, and the corporation that was being dissolved assigned its lease in the theatre property to Mayme C. Vance and Esther C. Bein. By these acts petitioner divested himself completely of all of his proprietary interest in the Ohio Theatre, its business, and its assets.

Petitioner's steps with respect to divesting himself of all interest in the State Theatre took a different course because of the formal requirements of Kentucky law with respect to dissolving corporations, and because of the fact that the stock certificates evidencing his ownership could not be found after a diligent search. Several witnesses testified to attempts to locate the certificates without success. In this situation petitioner assigned all his stock interest (50 per cent) to his wife by written instrument executed on December 30, 1942. Mayme C. Vance and Esther C. Bein dissolved the Kentucky corporation, as sole stockholders, but they operated the State Theatre during the taxable years as partners within the meaning of section 3797 (a) (2), Internal Revenue Code.[2]

The manner in which the theatres were operated during 1943 and 1944 shows that bona fide gifts were made by petitioner to his wife in December, 1942. Prior thereto petitioner had devoted 90 per cent of his time to managing the theatres, in which he had a proprietary interest. After he disposed of his proprietary interest petitioner devoted only about an hour each day to the theatres, and for his services he received compensation the same as any other employee. Most of the duties that petitioner performed in and prior to 1942 were handled during the taxable years by employees. The new partners employed an accountant, who handled all the office routine. They employed a house manager for each theatre, who opened and closed it, hired the employees, banked the daily receipts, and otherwise served the employer. They employed petitioner to book and buy the films shown at

---

SEC. 3797. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

 * * * * * * *

(2) PARTNERSHIP AND PARTNER.—The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

the theatres and to oversee generally the operation. While the partners consulted with Vance and received his advice on business matters, they could terminate his employment at the end of any year and under certain circumstances with only fifteen days' notice. This was a definite departure from petitioner's conduct of the business when he had unlimited dominion and control as managing partner and coowner.

After Vance and Bein disposed of their proprietary interests in the theatres, they dissolved their partnership. Respondent's theory denies this, but he does not contend that either Mayme or Esther was brought into the 1938 partnership. The evidence shows and we have found that neither husband nor wife was related by blood or marriage to the other husband or wife. This case, therefore, does not involve a family partnership. Nor does respondent so contend. His theory is that the husbands continued to operate the theatres during the taxable years regardless of the fact that they no longer owned any interests or rights in the theatres or the income-producing assets.

The second question, therefore, is whether Mayme's distributive share of partnership income should be taxed to petitioner on the theory that he exercised such dominion, power, and control over the business after the gift as to make him in fact the earner of the income. Respondent contends that this question "is answered and controlled by the principles enunciated in" *Commissioner* v. *Culbertson* (1949), 337 U. S. 733; *Commissioner* v. *Tower* (1946), 327 U. S. 280; *Lusthaus* v. *Commissioner* (1946), 327 U. S. 293; and the Tax Court's opinion in *J. M. Henson* (1948), 10 T. C. 491; reversed, *Henson* v. *Commissioner* (1949, CA–5), 174 Fed. (2d) 846. Although respondent relies upon the principles enunciated by the Supreme Court in family partnership cases, he concedes that "This case does not present the usual pattern of family partnership cases * * *." Nevertheless, he says "the difference in pattern in this cause does not change the legal effect * * *."

In the *Culbertson*, *Tower*, and *Lusthaus* cases, *supra*, the taxpayer was a partner and sought to bring a member of his family into the partnership. In each case the taxpayer had or retained a proprietary right and ownership in the partnership business and assets. Here, the petitioner disposed of all his proprietary right and his ownership in the partnership's business and assets, and dissolved the partnership of which he was a member. Mayme Vance was never a member of that partnership. He was never a member of the 1943 partnership. He never had any right to the profits of that partnership. He never exercised any dominion or control over its income or its assets as an owner thereof. Mayme and Esther determined, as the sole partners, how the profits or losses of the 1943 partnership would be shared. The facts show that Mayme received one-half of the partnership profits each taxable year in accordance with the partnership agreement. The facts show that she deposited her share of the profits in her individual

bank account, which she used for her own purposes. Petitioner had no authority to draw on this account. Mayme did not use her personal funds to pay household and living expenses. Petitioner paid these expenses during the taxable years, as he had prior thereto. Mayme reported her distributive share of the partnership profits as her income and paid the tax due thereon from her own bank account. Petitioner never exercised or had any dominion or control over his wife's share of the partnership profits, nor was he liable for any losses of the 1943 partnership.

In *Robert E. Werner*, 7 T. C. 39, *Albert Nelson*, 6 T. C. 764, and our *Henson* case, *supra*, the transfer of property to the wife, or the listing of property in her name, was followed by such dominion, power, and control over the business after the transfer that the husband was held to be the earner of the income. Vance's authority over the business after the gift was solely the result of his employment, and not as an owner, direct or indirect.

Prior to December 30, 1942, petitioner's dominion and control over the property and the income therefrom was an absolute right which adheres in a valid and legal title. As one of the owners he devoted 90 per cent of his time to operating the business. After December 30, 1942, and during the taxable years petitioner's right of dominion and control rested entirely upon the authority conferred upon him as an employee in his employment contract. As an employee he devoted about an hour a day to the business and received a stated salary for services rendered. The continuance of his contract was solely at the pleasure of his employer. No right of dominion or control existed in petitioner except as an employee. Any income produced by him as an employee belonged to his employer, and it was his employer that had the right of dominion and control and the right to receive any income produced. There is nothing in the *Earl*,[3] *Clifford*,[4] *Lusthaus*,[5] or *Tower*,[6] cases to the contrary.

Respondent has attempted to build up Vance's dominion and control, as an employee, to the point where he should be taxed as the person who produced the income. It is urged that this case is "on all fours" with *J. M. Henson*, 10 T. C. 491, and that we should follow our decision therein. The difficulty with this argument, which respondent recognizes, is that the *Henson* case was reversed, *Henson* v. *Commissioner* (CA-5), 174 Fed. (2d) 846. Furthermore, the decisions of the Court of Appeals for the Sixth Circuit, which would review this decision on appeal, are against the respondent. See *Kent* v. *Commissioner*, 170 Fed. (2d) 131, and *Lawton* v. *Commissioner*, 164 Fed.

---

[3] *Lucas* v. *Earl*, 281 U. S. 111.
[4] *Helvering* v. *Clifford*, 309 U. S. 331.
[5] *Supra*.
[6] *Supra*.

(2d) 380. Like results have been reached in this Court and in the other Courts of Appeal under varying circumstances, *Clifford R. Allen, Jr.*, 12 T. C. 227; *Arthur A. Byerlein*, 13 T. C. 1085; *Greenberger* v. *Commissioner* (CA–7), 177 Fed. (2d) 990; *Durwood* v. *Commissioner* (CA–8), 159 Fed. (2d) 400; and *Harris* v. *Commissioner* (CA–9), 175 Fed. (2d) 444.

In *Commissioner* v. *Culbertson*, 337 U. S. 733, 742, the Supreme Court stated that the question in family partnership cases is whether, considering all the facts, "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Paraphrasing some of the facts the Supreme Court considered, we find here that Mayme C. Vance and Esther C. Bein had a written partnership agreement, they conducted their business in accordance with the terms of that agreement, their testimony and the testimony of disinterested parties show that they conducted the business, their relationship to each other and to third parties was that of partners, each of them contributed one-half of the capital, they conducted the business through their managers and accountant, each drew her pro rata share of the profits and used it as she wished without control or restraint by her husband, and they really and truly intended to enter into a business partnership. Since they were the only partners in the business, it can not be said that petitioner was a partner therein or controlled and dominated the business so that he is taxable under section 22 (a), Internal Revenue Code, on his wife's distributive share.

Recent decisions by this Court where the income has been taxed to the person who earned it are distinguishable. *Louis Visintainer*, 13 T. C. 805, involved a case where there was no partnership agreement, no arrangement for joint venture, and the effect, if not the design, was held to be nothing more than a realloaction of income in the family group. In *Lyman A. Stanton*, 14 T. C. 217, partners conveyed interests to trusts for the benefit of members of their immediate family, retaining as sole trustee full and unlimited control and dominion over the partnership interest conveyed in trust. We held the grantors liable. No question involving trust income exists in the present case. *Elwin S. Bentley*, 14 T. C. 228, involved a plan or device suggested by tax counsel whereby wives would form partnership and employ husbands to operate an engineering business. We held that there was no real purpose to create a partnership and that the plan was simply a scheme devised by tax counsel to avoid the incidence of the taxing statutes. No such plan or scheme can be charged to this petitioner, nor was there any absence of intent on the part of his wife to risk her capital in an entirely new, separate, and distinct economic unit.

In *Wade Allen*, 6 T. C. 899, the taxpayer and his wife were estranged. They agreed that she should receive the earnings of one

of his theatres for the support of herself and their minor child. We held that he was the responsible operator of the theatre and taxed its earnings to him. We pointed out, *inter alia*, that the wife contributed no services or capital to the business and used the income to discharge the legal obligations of the husband. Here, Mayme C. Vance contributed half of the capital, operated the theatres with employed personnel, and used none of the income to discharge legal obligations of her husband.

In view of the foregoing, we hold that petitioner is not taxable upon his wife's distributive share of partnership income, but, since other adjustments were made by the respondent in determining the deficiency,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

OPPER, *J.*, dissenting: It is difficult to formulate a dissent in the field of intrafamily assignment cases such as this where so much depends upon the hearer of the evidence. *Commissioner* v. *Culbertson*, 337 U. S. 733. Yet unless some effort is made to reconcile results in situations where evidentiary facts are similar, nothing but a quicksand of unreliable precedents can result.

No fact in this case serves to distinguish it from such decisions as *J. M. Henson*, 10 T. C. 491; *Robert E. Werner*, 7 T. C. 39; and *Albert Nelson*, 6 T. C. 764. It is true that the *Henson* case was reversed (C. A., 5th Cir.), 174 Fed. (2d) 846, but *James Yiannias*, a memorandum opinion decided on the authority of the *Henson*, *Werner*, and *Nelson* cases, was recently affirmed in a post-*Culbertson* opinion by still another circuit (C. A., 8th Cir.), 180 Fed. (2d) 115. And see *Louis Visintainer*, 13 T. C. 805; *Elwin S. Bentley*, 14 T. C. 228. The *Yiannias* case is not even mentioned in the present opinion. Certainly no effort is made to distinguish it, which would indeed be difficult, since the facts are so similar that even the type of business involved was the same. See also *Wade Allen*, 6 T. C. 899. The suggestion is that because this proceeding will be reviewed by a circuit which has several times reversed the Tax Court on cases in this field, the present result is justified. I hope we are not creating a principle which will be applied by the Tax Court with varying results depending upon the circuit to which the case will go on appeal.

Since it seems to me the present opinion announces as a rule of law that the mere signing of documents which purport to change the owner-operator of a business into an employee is sufficient to preclude our further penetration, and since that rule seems to me unquestionably erroneous under all the cases from *Lucas* v. *Earl* through *Culbertson*, I must respectfully dissent.

HARRON, *J.*, agrees with this dissent.