Arthur J. Meier v. Commissioner. Milton H. Meier v. Commissioner.
Meier v. Commissioner
Docket Nos. 30008, 30010.
United States Tax Court
1951 Tax Ct. Memo LEXIS 43; 10 T.C.M. (CCH) 1088; T.C.M. (RIA) 51334; November 15, 1951
Norman Begeman, Esq., for the petitioners. Gene W. Reardon, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, consolidated for hearing, involve Federal income tax liability for the years 1944 and 1945. Deficiencies were determined as follows: Docket
Petitioner
No.
1944
1945
Arthur J. Meier
30008
$12,970.91
$1,677.90
Milton H. Meier
30010
6,873.55
7,800.58
The questions for our determination are: (1) Did the *44 Commissioner err in his determination that the entire net income of the Milcrest Company was taxable to the petitioners rather than to their respective wives as reported? (2) If the income is taxable to the petitioners, is it taxable on the basis of the partnership fiscal years ending July 31, 1944, and July 31, 1945, or on a basis of calendar years? (3) (This issue applies only to petitioner, Milton H. Meier, Docket No. 30010). Did the Commissioner err in determining that income from dividends from securities and capital gains from sale of securities for 1945, arising through a brokerage account in the joint names of the petitioner and his wife, is taxable in full to the petitioner, Milton H. Meier, rather than on the basis of one-half thereof to the petitioner an one-half to his wife as reported? A fourth issue raised by the petition in Docket No. 30010 in regard to computing the income tax under section 117 (c) (2), Internal Revenue Code, has been conceded by the respondent. Findings of Fact Arthur J. Meier and Milton H. Meier, petitioners herein, are brothers. For several years prior to the years here involved, and continuously thereafter, Arthur J. *45 Meier has been a director, president and general manager and Milton H. Meier has been a director, vice president and sales manager of Meier-Pohlmann Furniture Company (sometimes hereinafter referred to as the "corporation"), a manufacturer of kitchen and dinette furniture. Petitioners owned 5 2/3 shares of the common stock of the corporation of 400 shares outstanding. Dorothea Meier, wife of Arthur Meier, owned 18 shares, and Clara Meier, wife of Milton Meier, held none of the stock of the corporation. The remainder of the stock of the corporation was owned by relatives, the descendents of the founder of the corporation and grandfather of Arthur and Milton Meier. Arthur Meier became general manager of the corporation sometime prior to 1939 while one Joe Gruender was president, and became president a short time later when Gruender died. During the period from 1942 to 1945 internal dissatisfaction existed within the corporation, with Arthur and Milton Meier on one side and the other stockholders on the other. Early in 1943 Arthur and Milton Meier conceived the idea that the forming of another business might serve as an "out" for them if they should leave the corporation. A meeting *46 for the purpose of discussing the formation of a new business was held at the home of one of the Meiers in June 1943, at which Arthur and Milton Meier and their wives, Dorothea and Clara, were present and at which meeting Walter O. Heckmann, who was then the regularly employed accountant and auditor for the corporation and who aided in preparing the personal income tax returns of Arthur, Milton and Dorothea Meier, was invited. At this meeting there was a general discussion as to the formation of a jobbing business. Heckmann recommended that a partnership be formed. A subsequent meeting was held at the home of one of the Meiers about one month later, at which were present the two Meier families, Heckmann and Jack Weinberg, a good friend of the Meier families and an experienced and able salesman, who was then employed as the Chicago representative of the corporation and was at that time engaged in selling furniture on a commission basis to retailers in small lots. Weinberg had been invited to come to St. Louis for the purpose of discussing the possible formation of a jobbing business. At this meeting there was a general discussion again about the friction in the corporation and the *47 possible formation of a jobbing business, which was intended to embrace the representation of the corporation and other manufacturers whose lines would supplement that of the corporation. Weinberg was asked whether he would be interested in employment with such a jobbing business. Weinberg consented and was employed on a profit sharing arrangement. Heckmann at the same time was instructed to open up books of account for the Milcrest Company, a partnership (hereinafter called Milcrest). The formation of the partnership to be known as Milcrest was uppermost in the minds of Arthur and Milton Meier. Later upon Weinberg's return to Chicago a partnership agreement was prepared by an attorney in Chicago and executed by Dorothea Meier and Clara Meier as "D. Davies" and "C. Cole," under date of July 15, 1943. Their husbands did not sign. Dorothea Meier used her maiden name of D. Davies and Clara Meier used her maiden name of C. Cole in execution of the agreement. The maiden names of the petitioners' wives were used because Arthur and Milton Meier did not want the Meier name known to the trade in connection with the name Milcrest Company. The partnership agreement provided, among other things, *48 that the business should be the manufacture, sale or distribution of household furniture, furnishings and household products of all kinds, that the place of business should be in Chicago, that capital of $25,000 should be contributed by the partners and the profits divided in proportion to the capital contributions, that the partnership would employ the help required for the operation of the business, and that the partners should not be required to devote any time to the business. One Harry Hall, who had the representation for several lines of furniture, was employed about the same time to act as sales manager of Milcrest in New York. Hall commenced soliciting orders in New York but his employment continued only a short time because of an automobile accident. After Hall's retirement Weinberg was the only person employed by Milcrest to solicit business. Arthur and Dorothea Meier, who had earlier been residents of Chicago for a number of years, had already established banking connections with the Continental Illinois National Bank in Chicago. Heckmann opened cash receipts and cash disbursements books, a journal, a general ledger and a purchase record for Milcrest. He maintained these *49 books until the partnership was terminated in 1945. The original $25,000 capital of Milcrest was contributed by the issuance of checks to Heckmann and deposited by him on August 4, 1943, in the Continental Illinois National Bank in Chicago. These funds were furnished by Arthur and Milton Meier and were assigned on the partnership books as follows: $15,000 to D. Davies and $10,000 to C. Cole. Dorothea Meier at that time had separate property. No interest was ever paid by either Dorothea or Clara Meier to their respective husbands on the purported loans representing the original capital of Milcrest. Weinberg entered the employment of Milcrest in July 1943 as its sales manager for the Middle West region with an office in the American Furniture Mart Building, Chicago, Illinois. The terms of his employment never changed but subsequently on October 12, 1943, he signed a written contract of employment prepared by an attorney in Chicago. Dorothea Meier neither participated in any way in the drafting of the employment contract nor did she know who conferred with the attorney regarding its terms. Weinberg has since March 1941 continuously been an employee of the corporation, under the supervision *50 of Arthur and Milton Meier. Weinberg obtained orders, selling dinette sets, manufactured by the corporation, and nursery furniture, unfinished chairs, pull-up occasional chairs, and kitchen cabinets, obtained from other organizations. About 80 per cent of the furniture sold by Milcrest came from the corporation. Most of the sales by Weinberg for Milcrest were arranged by him on a sight draft, bill-of-lading, basis but a few sales were made on an open account basis. Weinberg prepared the sales papers covering his sales and sent copies direct to the furniture manufacturer and also to Heckmann's office in St. Louis. The furniture was shipped by the manufacturer direct to the Milcrest customers. Copies of all sales and purchase invoices were received by Heckmann and recorded on Milcrest's books. The customers made payments for Weinberg's sales by check to the Chicago office. Weinberg sent the checks to Heckmann in St. Louis and the latter, after making a record of the receipts, forwarded the checks to the Continental Bank of Chicago for deposit in Milcrest's bank account. All expense vouchers and purchase invoices from furniture manufacturers were sent to Heckmann by Weinberg, Arthur *51 and Milton Meier, and the corporation, and after approval by Arthur or Milton Meier were paid by Milcrest checks prepared and signed by Heckmann as auditor. No invoices or expense vouchers were approved by the petitioners' wives. Arthur and Milton Meier took "very little time" in the approval of the invoices. Milcrest paid certain traveling expenses of Milton Meier. Neither Arthur nor Milton Meier ever received any salary from Milcrest. The only business of Milcrest was the selling of furniture under a strict jobbing arrangement and it neither handled the furniture physically nor carried any inventories. Weinberg, in addition to selling, visited the factories of suppliers for the purpose of hurrying up shipments of the purchases and for the purpose of securing other items to sell. Neither Dorothea nor Clara Meier performed any services for Milcrest. Neither Arthur nor Milton Meier made any sales for Milcrest. Both traveled extensively for the corporation and at various times transacted business for Milcrest while on such trips, particularly while in Chicago. Milton Meier straightened out some furniture complaints which were made against Milcrest. At various times Weinberg *52 asked for and received advice on selling problems in connection with Milcrest from both Arthur and Milton Meier, and Heckmann conferred at various times with Arthur and Milton Meier on business matters concerning the bookkeeping problems of Milcrest. During February or March 1944 Arthur or Milton Meier obtained a line on the Goshen Furniture Co. which was prepared to manufacture dinette sets. After tentative arrangements were made to market its products through Milcrest, Weinberg commenced to take orders and within two weeks wrote about $250,000 worth of business. This entire venture terminated abruptly before any of the goods were actually shipped because of the sudden closing down of the Goshen Furniture Co. for reasons not here material. This incident coincided approximately with some trouble Milcrest was having with the OPA which was challenging its right to sell to other jobbers and which had instituted a suit in Chicago. Weinberg stopped selling furniture for Milcrest about March 1944, at which time Milcrest ceased doing business. It continued thereafter only for the purpose of liquidating. On January 12, 1944, Heckmann as auditor issued Milcrest checks for $15,000 and $21,000 *53 payable to D. Davies and checks in the amount of $10,000 and $14,000 payable to C. Cole. The first two checks above mentioned were endorsed by Dorothea Meier in the name of D. Davies and by Arthur J. Meier in his own name. The two checks made payable to C. Cole were endorsed by Clara Meier in the name of C. Cole and by Milton H. Meier in his own name. The check for $10,000 was deposited in Milton H. Meier's bank account maintained with a St. Louis bank and the check for $14,000 was deposited in a joint bank account of Milton and Clara Meier maintained with a Cleveland bank. The foregoing checks in the amounts of $15,000 and $10,000 represented a return of original capital and the checks for $21,000 and $14,000 represented a distribution of profits. The net income reported on the partnership return for the fiscal year ended July 31, 1944, was $35,133.38 and Schedule J of the return shows D. Davies' share to be $21,080.03 and C. Cole's share to be $14,053.35. The partnership return for the year ended July 31, 1945, shows net income of $2,577.93. D. Davies' share was indicated as $1,546.76 and C. Cole's share was indicated as $1,031.17. Both returns, showing the address of Milcrest *54 as 666 N. Lake Shore Drive, Chicago, and both the maiden and married names of the partners, were filed in the office of the collector of internal revenue at Chicago. The partnership return for the fiscal year ended July 31, 1944, was prepared by Heckmann and signed "D. Davies, partner." The partnership return for the fiscal year ended July 31, 1945, was unsigned. The minute book of the corporation of a meeting under date of December 23, 1943, contained a sentence as follows: "A. J. and M. H. Meier then confirmed their personal venture and investment in a jobbing business and outlined ultimately the scope of same may be of a very broad nature." The net earnings of Milcrest during the period from its inception to December 31, 1943, were $37,783.19. Its net income for the period January 1, 1944, to December 31, 1944, was a loss of $71.88. Arthur and Milton Meier reported their income on a calendar year basis. The business which was conducted under the name of Milcrest Company was a partnership, the petitioners, Arthur and Milton Meier, being the real partners and their wives being nominal partners. On May 31, 1944, Milton H. Meier had a brokerage account with Reinholdt and Gardner *55 which showed a debit balance of $8,188.59. On June 7 and 15, checks were drawn by Milton H. Meier for $650 and $6,000, respectively, on the joint account at the Cleveland Trust Co. and were deposited in his brokerage account at Reinholdt and Gardner. On July 25, 1944, the name of the brokerage account was changed to Milton Meier and Clara Meier. Thereafter stocks were purchased and sold through this joint account. The dividends and gains from sales of stock reported on the returns of Milton and Clara Meier for the year 1945 were derived from stocks purchased and sold through the joint account. On May 10, 1945, the account showed a debit for two checks, each for $1,000 to Milton Meier. The account showed a debit on December 8, 1945, of a check to Clara Meier for $1,800; also the following debits, but not the recipient: August 28, 1945, $20,500 and $1,000; November 16, 1945, $1,000; and December 11, 1945, $2,000. Opinion For many years the petitioners have been the managing officers of the corporation. Due to some internal dissatisfaction within the corporation the petitioners conceived the idea of forming another business that might serve as an "out" for them if they should leave *56 the corporation. The business formed was a jobbing business known as the Milcrest Company. The petitioners contend that Milcrest was a partnership, the partners being their wives. The respondent in his determination of deficiency disregards the petitioners' contentions and attributes the entire earnings of Milcrest to the petitioners. The burden, therefore rests upon the petitioners to prove that the profits of Milcrest are taxable to the petitioners' wives and not to the petitioners. The petitioners proffered proof that the wives were the real partners of Milcrest, including the testimony of four witnesses and certain documentary evidence. Neither of the petitioners testified at the hearing. We have examined all of the evidence with extreme care and conclude that the petitioners have failed to prove that the profits of Milcrest are taxable to the petitioners' wives. We agree with the respondent that the wives are mere nominal partners and that, in substance, the petitioners were the real partners of Milcrest. There is evidence that the parties here in question went through the formalities of forming a partnership, but after examining all the facts it is readily apparent that the *57 alleged partnership between the wives lacks substance. "In tax matters the realities of a transaction, not artificialities, are given effect." Nordling v. Commissioner, 166 Fed. (2d) 703, certiorari denied, 335 U.S. 817. The original capital of the business enterprise was actually contributed by the husbands. The evidence of purported loans of the amount to their wives is inconclusive. There is nothing in the record to indicate that repayment of the loans could have been made by the wives in case of failure of the new business. Dorothea Meier had separate property but there is nothing in the record to indicate how much; further there is no showing that Clara Meier had any separate property. Neither is there any showing that the wives had the opportunity to exercise any control over the money before it was turned over to Milcrest. The evidence indicates that the husbands decided to go into the jobbing business and supplied the necessary capital, investing it in the new business in the maiden names of their wives. The fact that interest was not paid on the purported *58 loans is a further indication that the transaction was without substance. It is admitted that neither of the wives knew anything about the jobbing business and rendered no services in connection with the new business. In contrast to the wives' position the husbands' business endeavors stemmed at the center of the new enterprise. Contrary to the alleged partnership agreement, wherein it was recited that the required help for the operation of the business was to be employed by the alleged partnership, we find that the husbands, petitioners herein, performed important functions for Milcrest. There is no contention that they performed the services hereafter discussed as employees of the alleged partnership, thereby distinguishing the instant case from William S. Bein, 14 T.C. 1144; Willis H. Vance, 14 T.C. 1168, and like cases. Milton Meier made some adjustments and received some expense money for his travel in connection with the Milcrest business. The husbands were active in arranging the Goshen Furniture Co. deal that failed. All expense vouchers and all purchase invoices were approved by Arthur or Milton Meier before checks were prepared and signed by *59 Heckmann. The wives approved none. At various times Weinberg consulted the petitioners for advice on selling problems, and Heckmann conferred at various times with them on matters concerning the bookkeeping problems of Milcrest. Even though the approving of the invoices took "very little time" it demonstrates that the petitioners, themselves, were keeping a "watchful eye" on the finances of the business. The formation of Milcrest was initiated by an idea originating with the petitioners. It was their own employment for which they wished the new venture to serve as an "out" in case they should leave the corporation. They, as officers of the corporation, controlled some 80 per cent of the business of Milcrest, for that amount of Milcrest business was transacted with furniture that came from the corporation. The petitioners, themselves, did not want the Meier name connected with Milcrest business, hence, the reason for using their wives' maiden names as the alleged partners of the business. The facts are not at all clear that the petitioners' wives controlled the distribution of the business income. A check for $21,000, representing profits of Milcrest, was endorsed by Dorothea Meier *60 in the name of D. Davies but also by Arthur J. Meier in his own name. A $14,000 check, also representing profits of Milcrest, was endorsed by Clara Meier in the name of C. Cole but also by Milton H. Meier in his own name and deposited in a joint banking account of Milton and Clara Meier. Clearly the check for $21,000 is not shown to have been controlled by Arthur J. Meier's wife. Furthermore, the $14,000 check deposited in a joint account is not shown to have been completely controlled by Milton H. Meier's wife, for there is no showing as to who exercised control over the account. If Clara Meier had control of this check, there appears no reason for Milton H. Meier's signature thereon. We conclude on all of the facts before us that the petitioners earned the money and that they were the real partners of Milcrest. The wives were nothing more than mere nominal partners. We next consider whether the respondent erred in taxing the income of Milcrest on the basis of the partnership fiscal years ending July 31, 1944 and July 31, 1945. This, of course, presents only a question of fact. The conclusion, above reached, that the petitioners were the real partners of Milcrest and that their *61 wives were mere nominal partners in a large measure disposes of this issue. The business was operated as a partnership, the books were kept on that basis, and partnership returns were filed with the collector. It follows that a partnership was in existence taxwise. Therefore, the provisions of section 188 of the Internal Revenue Code[1] apply and we hold that the respondent did not err in taxing the income of Milcrest on the basis of the partnership fiscal years ending July 31, 1944 and July 31, 1945. The final question for our determination, which applies only to petitioner Milton H. Meier, *62 is whether the Commissioner erred in determining that income from dividends from securities and capital gains from sale of securities for 1945 arising through a brokerage account in the joint names of the petitioner and his wife is taxable in full to the petitioner, Milton H. Meier. The petitioner contends that income from stocks acquired through the joint brokerage account in the name of husband and wife may be divided equally between the spouses. The only authorities cited by the petitioner in support of his position in this issue are I.T. 2381 (VI- 2 C.B. 118) and Daniel Upthegrove, 33 B.T.A. 952. Both authorities are distinguishable because they rely on the premise that the taxpayer and his wife own the property as tenants by the entireties and in the instant case the evidence fails to disclose that the securities were held in such a manner. Mere purchasing of securities through a joint account does not of itself show ownership as tenants by the entireties. The adding of a wife's name to a husband's brokerage account, thereby making it a joint account, is *63 not sufficient, without more, to prove that the income derived from that account should be divided between the husband and wife. There is nothing in the record to indicate whose money was used to maintain the account. Neither is it shown whether the account required special services and, if so, who contributed them. There is no proof here, as there was in Tracy v. Commissioner, 70 Fed. (2d) 3, of husband's &ntent to give his wife a half interest in the account. For failure of proof, we hold that the Commissioner did not err in his determination that the income from the joint account was taxable in full to the petitioner Milton H. Meier. Decisions will be entered under Rule 50. Footnotes
1. SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP. If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.↩