W. T. S. MONTGOMERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36040.    Filed October 22, 1954.

*William T. Rogers, Esq.*, and *John W. Donahoo, Esq.*, for the petitioner.

*A. E. Carpens, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The question for decision is whether all of the income of the blow pipe business for 1946 and 1947 should be taxed to the petitioner or whether only one-half, as his salary, should be taxed to him. He went through the form of transferring the assets of the business to his wife in 1940 and other formalities were carried out, some belatedly, in their efforts to give the impression that Irene was really the owner and operator of the business. Yet they were inconsistent in that the petitioner at times was indicated as the owner by certain formalities. The admitted motivating purpose of the transfers was to render the petitioner proof against a judgment in the suit for damages while saving the business so he could continue to earn his living from it. The transfers were held fraudulent and void as to the plaintiffs in that suit. The Commissioner contends that the petitioner never intended to convey more than legal title while retaining equitable ownership of the business for himself and, in any event, he actually earned the income and should be taxed with it.

The so-called arrangements pertaining to his father's estate do not help the petitioner's case. He testified that the mortgage for $5,550.03 equaled the entire amount he owed the estate at that time but thereafter he used additional funds of the estate for his own use, increasing his debt to $7,000 or more. He also indicated that his share of the estate would amount to between $3,000 and $4,000. Giving up his right to such a share would not compensate the estate for the larger amount owed or replace the mortgage for $5,550.03. However, those arrangements have little or no bearing upon the issue here for decision, except, perhaps, to show that the petitioner was taking good care of his own interests. The $4,000 borrowed by Irene never went to the estate but, on the contrary, most of it went into the blow pipe business to pay debts of that business. That $4,000 did not benefit the petitioner if the business was no longer his. However, if he continued to be the equitable beneficial owner, the $4,000 was not purchase price but a temporary loan to the business which was promptly repaid from the business

so that neither was Irene out of pocket as a result of it nor was the petitioner enriched by it.

Irene testified, "I do not operate the business at all. I'm not an engineer and I don't have anything to do with the actual running of it." She had no office, rarely went to the place of business, and had no experience in managing any business. She mentioned "decisions about policy" but gave no instance in which she had made any such decision and was extremely vague on the subject. Some effort was made to show that Irene's elderly father took over some executive authority and duties on her behalf after October 14, 1940. The record as a whole shows, however, that he did not. He had been employed in the business only a few years at that time and described his duties as "largely keeping the books." He received $50 per week and continued to keep the books and receive that same wage after October 14, 1940. He had no experience or ability to qualify him as an executive in the business, restricting the scope of the petitioner's freedom of control, and he never restricted that control in any important way, so far as the record shows.

It is not clear from the record that Irene ever withdrew earnings of the business for her personal use or benefit. The peculiarities disclosed by the 1945 returns relating to the judgment payment and deduction indicate the dominance and control of the petitioner over the income from the business. The $4,000 had little relation to the value of the assets in the going business, it actually went into the business instead of to the petitioner, and it was repaid promptly from the business. The petitioner testified that the assets of the business were worth very little without the benefit of his expert advice, knowledge, and skill on blow pipe installations. He said he would not have given his services to anybody else for as little as 50 per cent of the profits. He admitted that there was no great change in management after October 14, 1940, he was absolutely essential to the continued success of the business, and he was primarily responsible for its earnings at all times, including the taxable years. He also admitted that one of his purposes in transferring the business to his wife was to preserve his means of livelihood while divesting himself of anything that could be attached in the event of any judgment.

The evidence as a whole fails to show that the Commissioner erred in taxing the income of the Jacksonville Blow Pipe Company for 1946 and 1947 to the petitioner. Cf. *Robert E. Werner*, 7 T. C. 39; *David J. Pleason*, 22 T. C. 361.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

LeMire, *J.*, dissenting: The majority view sustains the respondent's determination that the income of the Jacksonville Blow Pipe Com-

pany is taxable in its entirety to the petitioner, apparently upon the principle that income is taxable to the person who earns it. Cf. *Robert E. Werner*, 7 T. C. 39. I am unable to agree that the rule invoked is properly applicable to the facts in this case.

The record establishes that on October 14, 1940, the petitioner sold the business he conducted under the name of the Jacksonville Blow Pipe Company to his wife for the sum of $4,000. The consideration paid was from the personal funds of the wife. On the same day the petitioner executed a deed and bill of sale of all his right, title, and interest in and to the real and personal property, excluding the accounts receivable and covenanting that all debts had been paid. With the reserved accounts receivable and the consideration received for the transfer the petitioner paid the then outstanding debts of the business.

There were no strings attached to the transfer. So far as this record reveals both parties intended that the legal title and beneficial interest in the property were to pass to the wife as absolute owner. The inference drawn in the majority opinion, that the $4,000 purchase price was a mere loan by the wife to the petitioner herein, appears to me to be unwarranted and without evidentiary support. The fact that the transfer was motivated by the existence of a contingent liability as the result of a negligence suit does not render the transaction invalid as between the parties or as to others except existing lienors. The Government was not a creditor at the time of the transfer nor was the transfer a device for defrauding the Treasury. After the execution and recording of the instruments of transfer on October 14, 1940, the petitioner's wife was the absolute owner of the property and could dispose of it as she saw fit, subject only to the rights of the existing lienor in the event of procuring a judgment. The fact that the book value of the assets transferred was greater than the consideration paid is of little significance, since the transfer would have been valid in law if it had been made by way of gift.

While it is true that the success of the business to a considerable extent was attributable to the technical knowledge and skill of the petitioner and that capital was a secondary attribute, the business was a manufacturing establishment employing a personnel of approximately 20 in the taxable years in question and was not purely a personal service enterprise.

In my opinion the majority view fails to recognize the distinction between actual control over income producing property with the consent of the true owner and the absolute right of control over the property and income which adheres in a valid legal title.

I am inclined to the view that the case of *Robert E. Werner, supra*, is distinguishable and that the facts in the instant case bring it within

the ambit of *Henson* v. *Commissioner*, 174 F. 2d 846, wherein the court said:

The controlling question in such cases is, therefore, not whether actual control over the property is exercised, but whether the right of control in fact exists; not who earns the income from such property, but who has the right to receive it. * * *

Cf. *Willis H. Vance*, 14 T. C. 1168; *Hilda M. Royce*, 18 T. C. 761. I, therefore, dissent from the conclusion of the majority.

TIETJENS, *J.*, agrees with this dissent.