### RINDSKOPF *et al.* v. VAUGHAN.

*(Circuit Court, D. Indiana.   November 22, 1889.)*

1. **CHATTEL MORTGAGE—CHANGE OF POSSESSION.**
    Under the statute of Indiana a mortgage of a stock of merchandise is valid, where the mortgagor is allowed to remain in possession and sell in the ordinary course of business, applying the proceeds of sales to the payment of the debts secured.
2. **SAME—INTENT TO DEFRAUD CREDITORS.**
    A mortgage executed with the fraudulent intent to cheat, hinder, or delay creditors,—accepted by the mortgagee with a knowledge of such fraudulent intent, he participating therein,—is void as against creditors.
3. **SAME—CONDITIONS.**
    A provision, in a chattel mortgage, giving the mortgagee possession if the property is assigned, is valid and enforceable.

At Law.

Action to replevin a stock of merchandise, under the provisions of a chattel mortgage.

*Morris, Newberger & Curtis,* for plaintiffs.

*Mark E. Forkner, J. H Mellett,* and *W. O. Barnard,* for defendants.

Woods, J., (*charging jury.*) The essential question in dispute here, gentlemen of the jury, is whether or not the mortgage made by Vaughan on the 6th day of July to plaintiffs is a valid mortgage. Its validity is questioned on the alleged ground that it was made with intent to cheat, hinder, and delay the creditors of Vaughan. The statute of Indiana provides—quoting it as nearly as I can from recollection—that any conveyance or disposition of property made with the fraudulent intent to cheat, hinder, or delay creditors shall be void. It seems—and in referring to the facts I shall, at present at least, only refer to such as are undisputed—that, prior to the date of this mortgage, Mr. Vaughan had been in business at New Castle, in this state, as a retail merchant; that he had become largely indebted, his liabilities equaling or exceeding his assets, so that it may well be said that he was insolvent. He was indebted to these plaintiffs in the sum of $7,200, or thereabout. On the day stated, (July 6th,) he made this mortgage to secure that indebtedness, evidenced by new notes given upon that day, due at different times,—at stated periods during five or six months from date. In addition to the $7,200 of indebtedness existing at the time, about which there seems to be no question, $800 was advanced on that day by plaintiffs to Mr. Vaughan, for the purpose of paying a debt that he specially desired to pay, and for the payment of which he used that money immediately; and that amount was secured by the mortgage, as well as by additional collaterals. On the same day, Mr. Vaughan disposed of other assets, by way of securing other creditors,—that is, on the same day and the following day, or in the early hours of the Monday following, the mortgage having been made on Saturday; and about 7 o'clock on Monday evening an assignment under the state statute was made by Mr. Vaughan for the benefit of all creditors,—Mr. Thompson, the defendant in this case, being the assignee named in that instrument. The execution of this assignment, by reason of the terms of the mortgage, created a right on the part of the mortgagees, if the mortgage is upheld as valid, to claim possession of the goods at once. It is provided in the mortgage that the mortgagor shall retain possession of the goods, selling them in the ordinary course of business, accounting for the proceeds from week to week to the plaintiffs,—the mortgagees; and another clause of the mortgage shows that the phrase "to account"—or whatever the exact phrase in that connection is—means "to pay over the proceeds." The phrase "to account" might be ambiguous; but a subsequent expression in the mortgage shows that the parties meant that the proceeds of the goods should be paid over. After the execution of the assignment to Mr. Thompson, plaintiffs had some negotiations with the assignee, and, these negotiations failing, they claimed possession of the goods; and, possession being refused, they brought this suit, and, by virtue of the writ in the case, obtained possession of the goods, giving the bond required by the law. They then advertised the goods for sale; made a sale, the regularity of which is not questioned, so far as the forms of procedure, the notice, and so forth, are concerned. The sale was made at public auction, the plaintiffs themselves, in effect, becoming the pur-

chasers; because it is not to be disguised, and, indeed, is not disputed by the plaintiffs' attorneys, that Mr. Bliss, who purchased at the sale, bought for them. There is nothing illegal in that. They had a right to have the goods bid in by a third person for their benefit, if they saw fit to do so. They are now in court before you, and the question is whether this mortgage is valid or not. If the mortgage was valid, they acquired a perfect title to the goods, and your verdict should be in their favor. If the mortgage was fraudulent,—that is, if it was made by Mr. Vaughan with the intent to cheat or fraudulently hinder or delay his creditors, and the plaintiffs accepted it with a knowledge of the fraud, participating in the fraudulent intent,—the mortgage is void, and your verdict should be for the defendant. The exact issue, therefore, is whether the mortgage was made with a fraudulent intent on the part of Mr. Vaughan to cheat, hinder, or delay his creditors, and accepted by the plaintiffs with the knowledge of that design and with intent to promote its accomplishment. Now, this issue has, by reason of the development of the testimony before you, been confused a little—both in the development of the testimony and in the argument—with other questions, which are not really in issue. There is testimony tending to show, and it was argued before you, that the plaintiffs deceived Mr. Vaughan, in order to get him to execute the mortgage, by promising to sell him goods; holding out inducements to him; and thereby fraudulently obtained the mortgage. That is not the fraud in issue here. If they did by deceitful promises raise expectations in the mind of Mr. Vaughan, and thereby procured his consent to execute the mortgage, the fraud is immaterial, unless there was such an agreement or understanding produced in Mr. Vaughan's mind as tended to the injury of creditors. Any secret understanding, any agreement or understanding between Vaughan and the plaintiffs for Vaughan's benefit which tended to the injury of the creditors, would constitute the fraud charged; but the mere procuring of Vaughan by deceitful promises to sell him goods, or to keep him on his feet or to keep him going by selling him goods, to execute the mortgage, would not be such a fraud as would support this issue.

Further, it has been argued that the plaintiffs promised Mr. Vaughan that they would sell him goods, and that that promise entered into the consideration of the mortgage, and that the plaintiffs, having broken this contract, are not entitled to enforce the mortgage. I instruct you that that is entirely immaterial. Such promises would not constitute a binding contract, if they were made; but, whether that would be so or not, whether they might have been so made as to constitute an element of the consideration of the mortgage, and a binding covenant on the part of the plaintiffs to furnish goods, that is not a matter that tends to establish a purpose to defraud creditors; and such breach of contract is not the fraud charged.

Coming, then, to the question whether the mortgage was made with the intent to defraud, you will observe that it is not a question whether the mortgage would delay other creditors,—that is, not the sole question,—but the question is whether it was made with a fraudulent intent to

delay. Of course, as has been stated in argument, the mere placing of a mortgage upon a stock of goods, the debtor having no other assets, necessarily hinders the collection of other debts; and the rule of evidence is well known, that men are presumed to intend the natural and necessary consequences of their acts. But if, from the mere fact that hindrance and delay necessarily result from the execution of such a mortgage, it should be taken to be a fraudulent hindrance, then, of course, every chattel mortgage executed by one situated as Mr. Vaughan was—not having other property with which to pay his debts—would necessarily be fraudulent. But it is lawful for an embarrassed debtor to prefer one creditor over another. He has a right to pay one, and let another go unpaid. He has a right to secure one, and leave another unsecured; and such delay and hindrance as necessarily arise from such a preference of one creditor over another is not a fraudulent hindrance, in the sense of the law. And, if the parties intended no delay, no hindrance, to creditors, more than necessarily arose from the execution of the mortgage on the goods, then it was not such a fraudulent intent, within the statute, as to make the mortgage void. But if the parties intended, beyond securing the plaintiffs' debt or demand, that the mortgage should be used as a device or means for baffling creditors, the intention was fraudulent, and the mortgage invalid. In the face of the mortgage, there is nothing which the court can say is unlawful. It is given to secure notes that are made to become due within a short time. The mortgagor is allowed to remain in possession of the goods; but he is required to keep strict account, and pay over the proceeds, less the expenses of the business, to the creditor. And, if the parties intended no more than results from the terms of the instrument, and the delays and troubles to other creditors that would result from a fair enforcement of it according to its terms, the court cannot say to you that there was anything fraudulent in it. But I repeat that, if it was meant to be used as a device for accomplishing more than that, it was fraudulent. Now, how has it been suggested, or how does the evidence show, if at all, that there was any purpose to use the mortgage otherwise than as a security for the indebtedness which it purports to secure? The suggestion is made that there is no specific description of the goods in the mortgage; that they are simply described as goods in a certain store-room, on premises described; and it is suggested that, if the business went on, necessarily other goods must have been brought into the establishment, and when other creditors should have come to seek their rights they would have been unable to determine what was covered by the mortgage and what was not covered; that this was necessarily the intention of the parties, and that it was a fraudulent intention. If the parties did intend that,—did intend by this general description of the goods to hold it over the stock, and to bring in other goods and thereby deprive other creditors of the fair opportunity to reach goods not really covered by the mortgage,—it was a fraudulent intention. Do you necessarily infer that that was the intention of the parties, from the terms of the mortgage? As a matter of law, you cannot do so. It is a question of fact for you, under all the circumstances

and proof, to determine whether there was any fraudulent intent. It is manifest that the mortgage might have been used in the way suggested; but it is not an uncommon thing, I think, to describe stocks of goods in that way, and to leave the mortgagor in possession with the privilege of going on, selling the goods, and accounting for the proceeds. Whether or not it was intended to be used in that way would depend largely on the subsequent conduct of the parties. Of course, it would have been easy to confuse the goods, and it would be easy to prevent confusion. It could have been prevented by taking an inventory of the goods on hand, or by keeping a careful inventory of the new goods brought in; so marking them that they could be distinguished from the goods that were there at the time the mortgage was made.

You have no right to infer a fraudulent intent without proof; and the rule is that fraud is not to be presumed upon slight circumstances. You are not to surmise fraud, or presume it without proof, either direct or circumstantial, of so convincing a degree as to produce a firm conviction in your minds of the fact that it existed. It is not required that it shall be proved beyond a reasonable doubt; but it must be proved clearly and satisfactorily. Then, I say, whether the parties meant to use the mortgage to cover up new goods that should be brought into the establishment is a question of fact for you. The mortgage itself furnishes no proof of such intent, because it is perfectly evident that by honest conduct under the mortgage no such result would necessarily follow; and it is to be observed that, as a matter of fact, business was not continued under the mortgage at all. But, of course, if, when the mortgage was made, they intended to do that, and the intention to make an assignment was formed afterwards, the making of the assignment would not affect the purpose with which the mortgage was made. The argument of counsel—the last counsel who presented the case for the defense—is that there was a sudden change of intention, and that both intentions were fraudulent,—the original intention being to improperly use the mortgage in the way of carrying on the business; the second purpose, as claimed by counsel, being that the plaintiffs should ostensibly and formally foreclose the mortgage, advertise and sell the goods, buy them in themselves, and then turn them over to Mr. Vaughan, and he become indebted to them again, — practically reinstating the original *status*. Of course, if this had been the original intention when the mortgage was made, it would have been fraudulent; certainly, if the goods were worth more than the mortgage, and probably so even if the goods were worth only the amount of the debt. And upon this phase of the case the value of the goods cuts a considerable figure; because if the mortgage debt was equal to the value of the goods, once they were mortgaged and pledged for that debt, it would be immaterial to creditors what was done with them afterwards, because there would be nothing in them for creditors, no matter how the mortgage was handled. But if there was a probable valuable margin in the goods, over and above the mortgage debt, and the object was, through the mortgage, to transfer the title from Mr. Vaughan to the plaintiffs, and then back, either directly to Mr.

Vaughan or into the hands of a third person, for his benefit, so that he should get that margin, of course that would have been a fraud. It would have been a fraudulent use of the mortgage, and, if that had been the intention when the mortgage was made, of course it would invalidate the mortgage; and, if it was substituted for a prior fraudulent intent, the mortgage is none the less invalid on account of the change of purpose. Then this question of fraud, gentlemen, as I think, lies right here: Did Mr. Vaughan and these plaintiffs intend originally to use the mortgage to cover up goods and keep creditors off, delaying them more than the mere fact of the mortgage, as an honest security, would do? It is not claimed that there was any purpose to finally cheat; but it is insisted that there was a purpose to improperly and unnecessarily delay other creditors. If that was so, the mortgage was invalid. If there was no such fraudulent intent, then the mortgage is not invalid, and your verdict should be for the plaintiffs.

Another question—I have already indicated its importance as bearing upon the question of fraud—is the value of the goods, which you must state in your verdict, if you find for the defendant. I believe it is not necessary to be stated, if your verdict be for the plaintiff. The value of the goods is what they would fairly sell for in the condition they were in, taking advantage of the market as it was. You have heard all the testimony bearing on that subject, and will determine for yourselves what the amount should be. Of course, proof of what was made by the sale of the goods at retail, though it may aid you in determining what the wholesale value was, does not of itself determine that value. In other words, the retail proceeds are not, of course, to be treated as the value, although they may furnish you material assistance in determining what the wholesale value was. I shall not review the evidence. The questions at issue have been fully and ably discussed by counsel on both sides; and, with the knowledge of affairs which you doubtless have, you will appreciate the force of the evidence upon the points in dispute.