John H. Denmark v. Commissioner.
Denmark v. Commissioner
Docket No. 38607.
United States Tax Court
T.C. Memo 1954-48; 1954 Tax Ct. Memo LEXIS 198; 13 T.C.M. (CCH) 487; T.C.M. (RIA) 54154; May 24, 1954, Filed John C. Ristine, Esq., 920 Southern Building, Washington, D.C., for the petitioner. A. E. Carpens, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the fiscal year ended August 31, 1945, in the amount of $22,579.90. The contested issue is whether in the taxable period involved the net income of three retail furniture stores which petitioner transferred to members of his family is taxable to petitioner. In the event the validity of the transfers is upheld an alternative issue is whether petitioner's income should be increased by the excess of the fair market value over the basis of installment accounts receivable of the three retail stores, pursuant to *199 section 44(d) of the Internal Revenue Code. The stipulated facts are found accordingly. Findings of Fact Petitioner, a resident of Jacksonville, Florida, filed his return for the fiscal year ended August 31, 1945, with the collector of internal revenue at Jacksonville, Florida. Petitioner first engaged in the retail furniture business at St. Augustine, Florida, in 1923. Subsequently, he acquired other retail furniture stores in Florida, located in Okeechobee, Cocoa, Ft. Pierce, Daytona Beach, Starke, DeLand, and Jacksonville. Petitioner operated all of these stores under the trade name of John H. Denmark Furniture Company, doing business primarily on an installment basis and selling a medium grade, or below, type of furniture. In 1939 petitioner established a wholesale furniture business in Jacksonville, Florida, which has been continuously operated under the trade name of Southern Wholesale Furniture Company. During the taxable year involved petitioner's immediate family consisted of his wife, Georgia L. Denmark; his son, Seeber M. Denmark; and his minor daughter, Barbara Jean Denmark, born November 2, 1930. During 1943 and prior to August 31, 1944, petitioner *200 was advised by his doctors that he had a heart ailment and that he would probably have to quit work entirely. By August 31, 1944, petitioner had disposed of all the retail furniture stores except the ones located in St. Augustine, DeLand, and Starke. On August 31, 1944, petitioner executed a bill of sale assigning the St. Augustine retail store to his minor daughter Barbara, naming his wife, Georgia L. Denmark, and himself as trustees for the daughter. That document provided in pertinent part as follows: "The business in St. Augustine, Florida, known as John H. Denmark Furniture Company, including good will and all of the stock of goods, wares and merchandise, furniture, fixtures, delivery equipment, accounts, debits, contracts, notes, claims and demands, of every kind and nature, located in or pertaining to party of the first part's said store situate in the City of St. Augustine, Florida. Said property being subject to all bills or accounts payable in connection with the operation of said store, and has a net value of $28,780.85. "TO HAVE AND TO HOLD the same unto the parties of the second part, their successors and assigns, forever in trust nevertheless, for the following *201 uses and purposes, viz: "1. To conduct, manage and operate the above described business and property, and in connection therewith to buy and sell merchandise and other personal property, collect, sue for or compromise or otherwise liquidate any indebtedness or account, to employ agents and servants and in general to perform and operate every function in connection with said business and property that they might, could or should do if it belonged to them individually. "2. In their discretion and upon such terms and conditions as they deem wise, to sell, exchange or otherwise liquidate said business and property. "3. To receive the issues, rents and profits of said business and property or the proceeds of the sale, exchange or liquidation of same and to hold the same univested, or to invest or reinvest the same or any part thereof in such property, real or personal, bonds, stocks, mortgages, notes or other securities as in their discretion they shall deem wise. "4. In their discretion to use all or any part of the profits, income or principal of the trust for the use and benefit of Barbara Jean Denmark. "5. Upon Barbara Jean Denmark becoming 21 years old, the parties of the *202 second part, or their successors, shall deliver all of the property remaining in the trust to her and thereupon the trust shall terminate. "6. In the event Barbara Jean Denmark should die before she becomes 21 years old, the trust property shall be distributed to her heirs and the trust shall terminate. "7. The parties of the second part, or their successors, shall not be liable for any error of judgment in the management of the trust property. "8. In the event either of the parties of the second part or any successor trustee hereunder shall for any reason fail, refuse or be unable to act, the remaining trustee shall appoint a successor trustee, who shall have the rights and powers of his predecessor. "9. The parties of the second part, or any successor trustee or trustees, shall be entitled to reimbursements at their option, for all expenses paid or incurred in connection with the management of the trust property and shall be entitled from time to time to reasonable remuneration for their services for the management of the trust property. The parties of the second part, or their successor trustee or trustees, shall be the sole judges of the reasonableness of their compensation. *203 " On August 31, 1944, petitioner executed a bill of sale assigning the retail business in DeLand, Florida, to his wife, Georgia L. Denmark, absolutely. On August 31, 1944, petitioner executed a bill of sale assigning the retail business in Starke, Florida, to his son, Seeber M. Denmark, absolutely. Each document, bearing the date of August 31, 1944, was signed by the petitioner, acknowledged before a notary public, and attested by two witnesses. Each document recited a consideration of one dollar, love and affection. No other amounts were paid and the documents were not recorded. The three documents for the three retail stores were placed by petitioner in a safe of the Southern Wholesale Furniture Company with the knowledge and consent of his wife, Georgia L. Denmark, donee of the DeLand store and co-trustee with petitioner for their minor daughter Barbara, donee of the St. Augustine store. Petitioner, in placing the document relating to the Starke store in the safe, acted under a general power of attorney executed by his son, Seeber M. Denmark, on August 23, 1943, who had been advised earlier by petitioner of his desire to make the contemplated gifts of the three stores. *204 Petitioner's son graduated from college in 1938, entered the United States army on February 11, 1942, and returned home in September 1945. At the time petitioner made the gifts of the three retail stores his son was serving overseas. During April 1945 petitioner filed a federal gift tax return, Form 709, with the collector of internal revenue, Jacksonville, Florida, disclosing the transfer of petitioner's interests in the three retail furniture stores at St. Augustine, DeLand, and Starke. Petitioner paid a federal gift tax of $1,097.70 on the gift tax return when filed and subsequently paid a deficiency of $3,083.56 thereon. Also during the same month three federal gift tax donee or trustee information returns, Form 710, were filed with the collector of internal revenue, at Jacksonville, Florida. Both the gift tax return and the information returns reported the transfers of the stores as effective September 1, 1944. On May 23, 1945, petitioner filed a report with the Unemployment Compensation Division of the Florida Industrial Commission relating to the change of ownership of the three retail stores, giving September 1, 1944, as the effective date of the transfers. During the *205 month of July 1945 notices were inserted by the respective donees in newspapers in St. Augustine, DeLand, and Starke, notifying the public, pursuant to the Florida Fictitious Name Statute, of their intention to register the trade name of John H. Denmark Furniture Company, under which each intended to engage in business. Prior to August 31, 1944, petitioner supervised the retail stores as well as the wholesale business. After August 31, 1944, petitioner had an understanding with his wife, individually and as cotrustee for their minor daughter Barbara, that he would continue supervision of the retail stores with the assistance of the store managers until the return of Seeber M. Denmark from the army. Petitioner acted for his son under the latter's general power of attorney of August 23, 1943. After August 31, 1944, petitioner's only monetary benefit from the three retail stores was a weekly salary of $30 from each of the stores as compensation for his supervisory services. All other monetary benefits were credited to the respective capital accounts of petitioner's wife, son, and daughter. Each of the retail stores at St. Augustine, DeLand, and Starke, had a store manager who was *206 active in dealing with customers, inventories, books, and accounts, and whose duties were to purchase, sell, check, and manage the affairs of the particular store. Subsequent to August 31, 1944, the stores continued to have resident managers and the same employees had authority to sign checks. Each store maintained separate records and did its own bookkeeping, but duplicate records were maintained by petitioner at his wholesale business in Jacksonville in order to assist him in his supervisory capacity over the retail stores pending the return of Seeber M. Denmark from military service. From time to time status reports and all cancelled checks were forwarded to petitioner from each of the retail stores to likewise aid petitioner in advising the store managers. Following the transfers of the three retail stores, the retail stores purchased the large majority of their stock in trade from petitioner's wholesale business, the Southern Wholesale Furniture Company. The terms and prices given the retail stores were the same as were given to any other retail furniture stores. The balance sheets of the three stores for the fiscal year ended August 31, 1945, show total accounts payable for *207 merchandise in the amount of $15,351.22. Of this amount $11,517.23 represented total debts of the three stores to petitioner's wholesale business, Southern Wholesale Furniture Company. Each of the retail stores in St. Augustine, DeLand, and Starke, had a bank account in the town in which it was located. Petitioner's wholesale business had an account in the Barnett National Bank of Jacksonville, Florida, in the name of the Southern Wholesale Furniture Company, and another account in the Florida National Bank of Jacksonville, under the name of John H. Denmark Furniture Company. Before August 31, 1944, the checks for each of the retail stores were signed principally by petitioner, the store manager, or both jointly. After August 31, 1944, and during the time that petitioner supervised the retail stores, the checks were similarly handled. The checks signed by petitioner were cleared through petitioner's office in Jacksonville. Prior to his entry into the army in February 1942, Seeber M. Denmark had worked in his father's wholesale and retail stores during vacations from school and as a salaried employee from the time of his graduation from college in 1938. Following his release from *208 military service in September 1945 he thereafter became active in the business and assumed full charge of the retail stores for himself, his mother, and sister. In October 1950 Seeber H. Denmark sold the Starke store and with the proceeds purchased a one-fourth interest in the wholesale furniture business of the petitioner. For the fiscal year ended August 31, 1945, the three retail furniture stores had taxable net incomes as follows: St. Augustine store
$14,034.25
DeLand store
10,116.01
Starke store
6,310.11
Total
$30,460.37
The above total income from the retail furniture stores in St. Augustine, DeLand, and Starke, were not reported on the federal income tax return filed by John H. Denmark for the fiscal year ended August 31, 1945. These amounts were reported as income on the returns of the individuals for the appropriate year, as follows: Barbara Jean Denmark
$14,034.25
Georgia L. Denmark
10,116.01
Seeber M. Denmark
6,310.11
In the statutory notice of deficiency the respondent determined that the sum of $30,460.37, representing the total net income of the three retail furniture stores in St. Augustine, DeLand, and Starke, during *209 the fiscal year ended August 31, 1945, is income taxable to the petitioner. The respondent determined by his notice of deficiency that in the event the Court should uphold the petitioner's contention that valid gifts of the three retail furniture stores at St. Augustine, DeLand, and Starke, were made by the petitioner to Barbara Jean Denmark, Georgia L. Denmark, and Seeber M. Denmark, respectively, then in the alternative, pursuant to section 44(d) of the Internal Revenue Code, the petitioner's taxable income for the fiscal year ended August 31, 1945, should be increased by the sum of $24,762.86, representing the excess of the fair market value over the basis of installment accounts receivable of the three aforementioned furniture stores as allegedly transferred. The face values of the installment accounts receivable of the three retail stores as of September 1, 1944, were as follows: St. Augustine store
$20,547.55
DeLand store
18,120.86
Starke store
13,820.80
Total
$52,497.21
The reserves for unrealized profits accounts of the three retail stores as of September 1, 1944, were as follows: St. Augustine store
$ 9,746.84
DeLand store
8,518.08
Starke store
6,497.90
Total
$24,762.82
*210 The fair market value of the installment accounts receivable of the three retail stores as of September 1, 1944, was not in excess of 50 per cent of their face values. Opinion LEMIRE, Judge: The primary question presented is whether for the taxable year ended August 31, 1945, the net income of the three retail furniture stores transferred by petitioner to three members of his family constitutes income taxable to him. Respondent contends that petitioner did not make valid legal gifts of the properties in question to his wife, son, and minor daughter, but merely attempted to reduce his taxes by reallocating profits within his family unit. In support of his position respondent argues that petitioner never actually relinquished dominion and control over the alleged gifts; that the transfers brought about no substantial change in the petitioner's relation to the retail businesses and, hence, profits continued to be earned by his management, publication, and services, as before; and that petitioner's wife and children contributed no property or vital services. Respondent contends that petitioner continued to manage, supervise, and conduct or control the businesses in the same manner *211 after August 31, 1944, as before. We cannot agree. It is true that petitioner's wife and minor daughter had no business experience and the son did not return from military service during the taxable year involved. However, the record shows that petitioner's wife authorized him to supervise the DeLand store after the transfer, and that his authority to supervise the St. Augustine store on behalf of his minor daughter arose out of his powers as cotrustee with his wife and natural guardian of the child. The authority to supervise the Starke store for his son until the latter's return was conferred by the power of attorney executed in 1943. The evidence establishes that petitioner in making the transfers of the retail stores to his family members was not motivated by any purpose to reduce taxes, but rather to further his desire to provide for the future welfare of his family, as well as lessen his business activities. The prior disposal of petitioner's other retail stores also evidences his purpose to curtail his business activities. The fact that petitioner was retained to supervise the retail stores at a weekly salary of $30 from each store in no way establishes that the transfers *212 lacked substance. No right of dominion or control existed in petitioner except as an employee, and the petitioner's wife, son, and minor daughter were the sole persons who had the right to receive the income produced from their respective stores. See Willis H. Vance, 14 T.C. 1168; J. M. Henson, 174 Fed. (2d) 846, reversing 10 T.C. 491. The intention of the petitioner to make the gifts is evidenced by the execution of bills of sale transferring to his wife the DeLand store and to his son the Starke store, absolutely. The gift to the daughter of the St. Augustine store was made by a transfer to an irrevocable trust. While there is no evidence of actual delivery of the bills of sale to the respective donees, the record shows that the instruments transferring title to the property to the wife, individually, and to the trustees for the daughter were deposited in the petitioner's safe with the knowledge and consent of the petitioner's wife. The deposit of the bill of sale to the son was made pursuant to authority contained in the son's general power of attorney to the petitioner. Acknowledgment of the gifts by the wife and daughter is evidenced by *213 their execution and filing of donee information returns. While the donee's information return with respect to the gift to the son was executed by the petitioner as agent, because of the son's absence in the armed services, acceptance by the son is presumed. We think the record establishes all of the elements necessary to effect valid and complete gifts. Edson v. Lucas, 40 Fed. 398, 404. Cf. Louis Visintainer v. Commissioner, 187 Fed. (2d) 519, reversing 13 T.C. 805, certiorari denied, 342 U.S. 858. In the light of all the facts and circumstances presented by the record here, we are of the opinion that as a result of the instruments of transfer dated August 31, 1944, and the various steps taken thereafter in the fiscal year ended August 31, 1945, petitioner made valid and complete gifts of the three retail furniture stores in question to his wife, son, and minor daughter, and the income is taxable to them and not to petitioner. So holding, it is necessary to discuss the respondent's alternative position that the amount of $24,762.82 [1] is includible in petitioner's gross income under the provisions of section 44(d) of the Internal Revenue Code *214 . [2]
The controversy, therefore, involves a determination of the fair market value of the installment accounts on September 1, 1944. Respondent contends that the *215 fair market value was equal to their face value in the amount of $52,497.21, and that the difference between petitioner's conceded base of $27,734.35 and the face value of the installment accounts should be included in petitioner's gross income for the taxable period. The petitioner offered the testimony of two expert witnesses of long experience in all phases of the operation of retail furniture stores, doing business in Florida on an installment basis and selling medium grade merchandise to customers such as were served in the three retail stores in St. Augustine, DeLand, and Starke. Each expert witness expressed the opinion that the fair market value of such installment accounts, on or about September 1, 1944, would not be greater than 50 per cent of their face or book value. The respondent offered no testimony on the fair market value of the installment accounts. The petitioner's expert witnesses were competent and qualified to express their opinions and gave their reasons in support thereof. These witnesses were disinterested and unimpeached. In the absence of any contradictory evidence, we think there exists no sound reason for substituting our own judgment as to the fair *216 market value of the installment accounts. The petitioner also expressed the opinion that the fair market value was not in excess of 50 per cent. We, therefore, have so found as a fact. Since 50 per cent of the face value of the installment accounts is less than the petitioner's base, no taxable income resulted from the distribution of the installment accounts in the taxable period ended August 31, 1945. Decision will be entered under Rule 50. Footnotes
1. The amount as stipulated. ↩
2. SEC. 44. INSTALLMENT BASIS. * * *
(d) Gain or Loss upon Disposition of Installment Obligations. - if an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange - the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange - the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. * * *↩